## Martha J. Willetts and others v. Simon Mandlebaum and others.

*Title: Possession: Intendments: Laches.* Where plaintiffs assail a title which has stood undisputed for half a century, and which was founded originally upon a judicial determination, every reasonable intendment will be made in support of the existing possession.

*Laches: Possession: Ejectment: Remedy in equity.* So long a delay is not wholly accounted for in this case by showing that plaintiffs could not before have brought ejectment because another had a life estate; for relief might have been sought in equity against the partition deed under which defendants claimed, if any substantial grounds for it existed.

*Ancient probate proceedings: Presumptions.* As strict proof is not required of ancient probate proceedings upon which defendants' title is based, *as if they were recent*; and especially not when the proceedings called in question were had at a period in the history of our state whose judicial records are to a considerable extent lost or destroyed, so as to render it impossible in most cases to make a complete exhibit of all the papers and proceedings.

*Territorial law construed: Register of probate: Partition.* The register of probate in 1817 had authority under the territorial act of January 9, 1811 (*1 Ter. Laws, p. 160*), to make partition of real estate among tenants in common.

*Recital: Deed: Partition: Order: Evidence.* The recital of an order made by the register of probate that the administrator make conveyances in partition of the estate, contained in a deed dated in 1817, and purporting to be a deed in partition, and to be made in part execution of the order recited, where the deed is in the handwriting of such register, and is subscribed by him as a witness, and the acknowledgment taken by him, and where the record of the proceedings in partition is defective and parts of it lost, is held to be evidence of the granting of such order.

*Register of probate: Jurisdiction: Partition: Order: Presumptions.* Where the register of probate, having jurisdiction under said territorial statute over the settlement of an estate and authority to partition the lands, has granted an order of partition requiring conveyance of a parcel to a party, one claiming under such party will not be required for the purpose of sustaining the jurisdiction of the register to grant such order, to prove that the party had an interest in the lands partitioned; for this would have been matter of evidence upon which the register must have passed affirmatively in making the order in question, and the order itself is the best and the only legitimate evidence that such a right was established.

*Partition proceedings: Parties: Presumption.* It appearing that a party to whom a portion of an estate has been awarded by partition proceedings has accepted the deed and taken the benefit of it, no other evidence that he was properly before the court as a party to the proceeding is necessary.

*Remedy: Appeal.* The proper remedy of any heir in the estate thus partitioned, whose interest was injuriously affected by the adjudication, and who was dissatisfied therewith, was an appeal under the statute.

*Heard October 23 and 24. Decided January 27.*

## Error to the Superior Court of Detroit.

*A. Russell* and *H. T. Backus*, for plaintiffs in error.

*S. T. Douglass* and *G. V. N. Lothrop*, for defendants in error.

COOLEY, J.

The plaintiffs brought suit in ejectment to recover a valuable lot in the city of Detroit which they claim as the heirs at law, or grantees of heirs at law of Catherine Welch, afterwards Willetts, whose title originated in or about the year 1813, by descent from her mother, Bridget Belcher. The defendants claim under Elijah Willetts, who married Catherine Welch in 1817, and to whom in the year last named a deed was made by the administrator of Bridget Belcher, of the lot now in question, the purpose of which was therein declared to be, to carry into effect an order or decree of the probate court in partition. The evidence appears to establish the fact that ever since the date of this partition deed this lot has been held and claimed by Elijah Willetts and those deriving title from him, and the claim of the plaintiffs would be barred by the statute of limitations were it not that Elijah Willetts was living until 1868, and up to that time would have been entitled to possession in right of his wife if she continued to be owner until her death. If the proceedings in partition are valid and were evidence of title in Elijah Willetts as against his wife, the plaintiffs, it is manifest, cannot recover, as their claim must necessarily be adverse to those proceedings.

The first thing that strikes the mind in taking up such a case is the long delay in taking any proceedings to contest the validity of the partition. This is not wholly accounted for by showing that ejectment could not have been brought by the heirs of Catherine Willetts before the death of Elijah Willetts. If Catherine Willetts in her life time, or her heirs afterwards, had knowledge of the proceedings in partition, it is reasonable to suppose they

understood Elijah Willets and his grantees to be claiming title in fee under them, and in that case if there were facts which might be brought forward to show that the partition deed, which constituted a cloud upon their reversionary title, was void, there would have been no difficulty in obtaining the proper relief by the aid of a court of equity.

Under these circumstances when the plaintiffs come forward to assail a title which has stood undisputed for half a century, and which was founded originally upon a judicial determination, every reasonable intendment should be made in support of the existing possession, and it would be in the highest degree unreasonable and unjust to require defendants to make that strict proof of these ancient proceedings that would be expected had they been recent. And especially is this the case when the proceedings which are called in question were had at a period in the history of Michigan whose judicial records are to a considerable extent lost or destroyed, so that we may almost take judicial notice that at this day it would be impossible in most cases to make a complete exhibit of all the papers and proceedings that were exhibited or that took place in any probate matter of the period in question.

In the present case the parties have made what proofs they could of the probate records, but some of them appear to be lost, and to some of the proceedings in the case of Bridget Belcher there are only brief calendar references, made long after the transactions themselves, to which they refer, took place. We shall not examine in detail the evidence adduced to show the probate proceedings, as it will suffice for the presentation of our views to state that enough was proved to warrant a jury in finding that George Welch, one of the children of Bridget Belcher, was appointed administrator on the estate of his mother in the year 1814; that he gave bond and took upon himself that trust, and that he filed an inventory showing, as property of the estate, two lots in Detroit (one of which is assumed to be the one in question), valued at six hundred dollars and four hun-

dred and seventy-five dollars, respectively, and personal property to the amount of near four thousand dollars. There was also evidence from which the jury might find that the book of probate records containing the proceedings from December 16, 1816, to December 30, 1818, was wholly lost, but that on May 12, 1817, George Welch, the administrator, executed to Elijah Willetts a deed of the lot here in question, which purported to be a deed in partition made in part execution of an order recited therein, as follows:

"On examination of the report made by James Abbott, Esq., George McDougall, Esq., and David McKinstry, it is thereupon adjudged, ordered and decreed, that the said George Welch, in his capacity as administrator to the estate of the late Mrs. Bridget Belcher, deceased, shall make good and legal conveyances to such individuals as named in said report, and that the said George Welch comply with all and every part of said report."

The recitals in the deed show further that this order was made by Charles Larned, register of probate for the judicial district of Erie, Huron and Detroit. The deed itself was proved to be in the handwriting of the register of probate, and was witnessed and the acknowledgment taken by him. And at the same time a similar deed was made of the other lot to William Belcher, one of the heirs, purporting to be made under the same partition order.

Now, to suppose that the register of probate drew such a deed, reciting therein an order made by himself when none had in fact been made, and that the administrator executed it with the knowledge he must have had of the facts, would be to assume such malfeasance, if not corruption, in office as should never be assumed from a mere absence of evidence in support of official action after so long a period has elapsed and under circumstances so well calculated to favor the loss of evidence. It is much more reasonable to presume that the register of probate, who at the time was unquestionably exercising jurisdiction over the

administration of this estate, and who thus in his own hand-writing gives what purports to be a copy of one of his own orders, did actually make this order as one of the steps in the settlement of the estate, if it would be an appropriate measure in the course of such settlement, and if by law he had authority to make it.

That the register of probate had authority to order such a partition can hardly, I think, be disputed. The territorial act of January 19, 1811 (*1 Ter. Laws, 160*), expressly empowered him " to make partition, both among tenants in common, joint tenants, co-heirs and devisees." The act did not prescribe in detail what should be the proceedings, but, as was customary in those early times, left nearly everything regarding the procedure, to be determined by the court itself. And while it is matter of general notoriety that the judicial proceedings of the territory were exceedingly informal, it is believed that the rights of parties were not the less on that account kept carefully in view.

The register of probate, then, had authority to make partition of estates, and it only remains to be seen whether he acquired jurisdiction to make the particular order which is in question in this case. It is denied by the plaintiffs that he could have jurisdiction to make this order, unless it first appeared that Elijah Willetts was a joint owner with others, of the lands belonging to Bridget Belcher's estate, and there is no evidence except the order itself, that he was such a joint owner. There is consequently, it is said, no proof to sustain the jurisdiction.

To state the reasoning on the part of the plaintiffs on this branch of the case a little more in detail, it is understood to be as follows: The register of probate neither had nor could have jurisdiction to set off any land to Elijah Willets, unless he was a joint owner with others of the land to be partitioned. He was not one of the heirs, and he was not shown in any way, unless the very assumption of jurisdiction by the court can be held to show it, to have acquired any rights in the land by purchase. But if juris-

diction depends upon his having a right in the land, to make the assumption of jurisdiction prove the right, is to reason in a circle, and the whole may be embodied in a single sentence, that the register of probate had jurisdiction because he assumed to have it.

This view of the case is plausible, but not, we think, sound. The court of probate had undoubted jurisdiction in the matter of the estate of Bridget Belcher, and might order a partition as one of the steps in its settlement. To the proceedings concerning this estate all the heirs were parties, and such other persons as claimed to have any rights derived from the heirs would be proper parties to the partition. The jurisdiction of the court would not depend on whether the claim was well founded or not; it had a general jurisdiction as regards the subject matter to be partitioned, and the question of the rights of the respective claimants would be the subject of evidence, and of an adjudication by the court. And even an erroneous conclusion by the court in passing upon the evidence would not render its action invalid, but only make it subject to review and reversal by the supreme court, to which an appeal was given.—*1 Ter. Laws, 168.* It was not, therefore, the actual existence of a right in Elijah Willets that gave the court jurisdiction to act and make the order in this case, but the court having jurisdiction, must find upon the evidence that he had a right, before it should set off lands to him. And the order is the best, and indeed the only legitimate evidence that such a right was established.

It would of course be necessary that Elijah Willets should be made a party to the proceeding before any order could be made affecting his interest. But the order appearing to have been made in his favor, and he having taken the benefit of it, no other evidence is needed to show that he was before the court. And if any heir whose interest was injuriously affected by the adjudication in favor of Elijah Willits, was dissatisfied therewith, the proper remedy should have been brought by appeal.

WILLETTS v. MANDLEBAUM.

As this conclusion corresponds to that of the superior court, and as we discover no error in the rulings of that court on the admission of evidence, · the judgment should be affirmed, with costs.

The other Justices concurred.