LOVELL v. JOHNSON.

(Circuit Court, D. Massachusetts. August 18, 1897.)

1. EQUITY—PLEADING—BILL AND ANSWER.

It is a settled rule that under equity rule 61, as interpreted by the supreme court, an allegation in the bill not noticed in the answer is to be proven by the complainant, in the absence of exceptions.

2. PATENTS—INVENTION—FORMATION OF COURTS.

The creation of a slot or other cavity of a particular form or size, or the change of form or proportions of an existing slot or cavity, merely to provide accommodation for the device which is the real conception, or for the really useful thing, does not involve patentable invention, unless under very extraordinary circumstances.

3. SAME—BREECH PIECES FOR GUNS.

The Entebrouk patent, No. 230,409, for an improvement in breech-loading firearms, consisting of a breech piece for a single-barreled gun, covers nothing but the construction of a cavity suitable to accommodate the working parts of a central hammer and a top snap in line, and is void for want of invention.

This was a suit in equity by Benjamin S. Lovell against Mary Elizabeth Johnson for alleged infringement of letters patent No. 230,409, granted to Charles H. Entebrouk, July 27, 1880, for an improvement in breech-loading firearms.

Maynadier & Mitchell, for complainant.

Causten Browne, for defendant.

PUTNAM, Circuit Judge. This is a bill in equity charging infringement of a patent issued for an alleged invention. The answer does not deny invention; but it is well settled under equity rule 61, as interpreted by the supreme court, that an allegation in the bill not noticed in the answer stands to be proven by the complainant in the absence of exceptions. The question of invention was not specifically opened by the briefs, but at the hearing it was raised incidentally by the respondent. In addition, it seemed to us that this question obtruded itself in such special manner that the court could not entirely overlook it, even though not urged by the parties. Accordingly, we requested additional briefs with reference thereto, and we are indebted to the counsel on either side for promptly complying with our request. The court believes it now has before it all that can in any way aid it with reference to this branch of the case. There is only one claim in the patent, which is as follows:

"The breech piece, A, of a single-barreled gun, slotted in two directions, as described,—that is to say, horizontally and vertically,—the vertical slot being in the center, whereby the hammer and top snap may be placed in line, and still the operating parts accommodated; all as set forth."

The complainant insists that the patent is for a new breech piece,— in other words, for a new manufacture; but in determining questions of this character it is necessary to avoid the danger of being misled by terms, and to ascertain exactly what was accomplished by the patentee. The case, in this particular, leaves no doubt in the mind of the court. The specification says as follows:

"A breech piece for a single-barreled gun has never heretofore been so contrived as to accommodate a central hammer and top snap, the difficulty being to get the hammer and top snap in line, as they are not in double-barreled guns,

and still to provide for the working of the locking bolt and other operative parts within the breech piece."

If the patent worked out the conception contained in this extract, it would result in a combination which would have been a subject-matter of a very different nature from what was in fact covered by the claim according to its undoubted interpretation, in the light both of its own phraseology and of the circumstances of the case. The specification, however, referring to the arrangement of the central hammer and top snap in line, says further as follows:

"There is nothing novel in these operative parts per se, and I have merely transferred them from double-barreled guns, and arranged them, as described, so as to fit in and work within the slotted breech piece that I have provided; the novelty of my device being in the structure of the breech piece."

The result of this leaves it clear that the entire invention covered by the claim was as follows: The patentee, or some one else, conceived the combination of a central hammer and top snap in line, either as an original thought or as an idea transferred to a single-barreled gun from a double-barreled gun. Taking the specification and the drawings together, it appears that the central hammer and top snap were brought into line in a single-barreled gun by an expedient which enabled the locking bolt, interposed between the operative parts of the top snap and the barrel of the gun, to be moved backwards and forwards, without interfering with the operation of the hammer. This was apparently done by opening a slot in the bolt, through which the hammer could drop, the slot being sufficiently long not to interfere with the hammer whether the bolt was pushed forward or drawn back. But, however done, this was the conception by means of which the central hammer and top snap were brought in line, and, this conception being completed, nothing remained except to form a cavity in the breech piece which would receive the parts constituting the combination. It being clear that the claim in no part covers the combination, or the arrangement of the parts operating the central hammer and the top snap, the creation of this cavity is all which remains to be covered by it, and all, indeed, which it assumes to cover. If necessary to make these propositions more clear, it is so made by an examination of the file-wrapper relating to this patent. The original application contained the following:

"My invention relates to that class of guns with one barrel using a firing pin, and loading at the breech in the way now common. Its object is to provide a single gun with both the central hammer and the top-snap, and it consists in the combination of a breech piece or frame slotted centrally for the hammer, a central hammer in this slot, and a top snap, consisting of the usual locking bolt, arranged centrally in the breech piece and in line with the hammer, and a lever and tumbler; all arranged as now to be described."

Also the following:

"The gist of the invention is the combination of the breech piece, A, slotted centrally to receive the hammer, B, and provided with the bolt, C, for locking the barrel, actuated by a tumbler or pin, c, which is vertical (instead of horizontal, as above explained); the advantage being that the finger lever, $c^1$, is brought on the upper surface of the breech piece, instead of on the side. All single guns heretofore known to me, with central hammers, have had side snaps; and all single guns with top snaps have had side hammers. I have devised the means shown for combining both these desirable features in a single gun."

And the claim was as follows:

"The combination of centrally slotted breech piece, A, central hammer, B, and top snap, C, c, c¹, as shown."

This claim was strictly for a combination, and entirely unlike that of the patent as issued, which latter the complainant, as we have said, maintains is for a new breech piece as an independent manufacture, and not for a combination. The claim as originally made was rejected by the patent office. It cannot, therefore, be disputed that under the circumstances the claim in issue, both by its express terms and in connection with the specification, and also in view of its history, covers nothing except the construction of a cavity suitable to accommodate the working parts of a central hammer and a top snap in line. Therefore the question of invention is simply one of the form and proportions of a receptacle for something which had been devised by the patentee, or by some other person, and which is not claimed. That form and proportions may sometimes involve patentable invention under special circumstances, must be admitted. Such was the fact with the conical car in Winans v. Denmead, 15 How. 330; also with the last in Mabie v. Haskell, 2 Cliff. 507, Fed. Cas. No. 8,653. It is generally said, however, and properly so, that mere form and proportions do not constitute the basis of a patent, except for a design, which is not the nature of the patent here in issue. It would be hazardous to attempt to lay down a categorical rule which would determine under what circumstances form and proportions, or either of them, are patentable, and under what circumstances they are not so. Perhaps the most satisfactory statement is in Winans v. Denmead, at page 341. Without undertaking to explain in any general way under what circumstances a matter of form or proportions may properly furnish the basis for the issue of a patent, it is enough to say that when the creation of a slot or other cavity of a particular form or size, or the change of the form or proportions of an existing slot or other cavity, is simply in order to provide accommodation and room for the device which is the real conception, or for the really useful thing, the result occupies a part of the great field which is common to all mechanical arts, no part of which can be monopolized by any, unless under very extraordinary circumstances, not exhibited in the case at bar. Presumably, it is everybody's privilege to make a receptacle for whatever may need one. Considering, therefore, that, so far as any alleged invention covered by the claim in issue is concerned, it relates only to finding a cavity of proper form and proportions to accommodate parts and materials the arrangement of which had been previously conceived, it lies outside of the field of invention, and the patent cannot be sustained. This fact is so clear that none of the minor propositions urged by the complainant, which are often available to aid the court in determining the question of invention in doubtful cases, can properly receive any consideration; and the bill must be dismissed for the want of patentability. Let the respondent, on or before the 4th day of September next, file a draft decree dismissing the bill, with costs, and the complainant file corrections thereof on or before the 11th day of September next.