BUTTERFIELD et al. v. MILLER et al.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

No. 2,128.

1. QUIETING TITLE (§ 12*)—SUIT TO REMOVE CLOUD—NECESSITY OF POSSESSION BY COMPLAINANT.

A federal court of equity has jurisdiction of a suit to remove a cloud from title, although neither party is in possession, where the question in issue is the validity, interpretation, and effect of an administrator's deed under which complainant claims, including the establishment of the fact of administratorship of the grantor.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 8–12, 44, 45; Dec. Dig. § 12.*]

2. JUDGMENT (§ 497*)—COLLATERAL ATTACK—GROUNDS—RECITALS.

In a collateral attack on a judgment only jurisdictional questions can be considered, and, if the court was one of general jurisdiction, recitals of jurisdictional facts in its record are presumptively true, and can only be overcome by other evidence contained in the record.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 937, 938; Dec. Dig. § 497.*]

3. ATTACHMENT (§ 77*)—PROCEEDINGS TO PROCURE—AFFIDAVIT.

Under the attachment statute of Tennessee of February 15, 1836 (Laws 1835–36, c. 43), as amended by Act Jan. 27, 1838 (Laws 1837–38, c. 166) p. 234, which authorizes an attachment on an affidavit that defendant is a nonresident of the state, such an averment in a verified bill may constitute a sufficient affidavit.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 204–206, Dec. Dig. § 77.*

Issuance of attachment, following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 606; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

4. ATTACHMENT (§ 111*)—PROCEEDINGS TO PROCURE—AFFIDAVIT OF NONRESIDENCE.

Under the attachment statute of Tennessee (Act Feb. 15, 1836 [Laws 1835–36, c. 43]), as amended by Act Jan. 27, 1838 (Laws 1837–38, c. 166), which authorized an attachment on an affidavit that defendant was a nonresident of the state, construed in accordance with the rule adopted by the Supreme Court of the state, an averment in such an affidavit that defendant was a "citizen" of another state was sufficient.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 292–302; Dec. Dig. § 111.*]

5. ATTACHMENT (§ 211*)—PROCEEDINGS TO PROCURE—SUFFICIENCY OF PLEADING.

A bill for an attachment against a nonresident defendant was not insufficient to give jurisdiction to the court because it did not pray for a personal judgment for any deficiency against the defendant where it contained a prayer for general relief, and by reason of defendant's nonresidence and nonappearance such a judgment would have been a nullity.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 706–721; Dec. Dig. § 211.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EVIDENCE (§ 372\*)—ANCIENT DEEDS—PROOF OF AUTHORITY TO EXECUTE.

The general rule is that if an ancient deed recites an authority under which it purports to be executed, or recites facts equivalent thereto, the recital is prima facie evidence of the authority, provided acts of ownership have been done under the instrument; but, where the authority under which the deed is claimed to have been executed is a matter of record, the deed is not admissible, however ancient it may be, as an evidence of title to land, without the production of the power or an authenticated copy, or explanation of the failure to make such production.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.\*]

7. EVIDENCE (§ 372\*) — ANCIENT ADMINISTRATOR'S DEED — ADMISSIBILITY — PROOF OF ADMINISTRATORSHIP.

A deed to land, purporting to have been made by the administrator of the record owner, was executed in 1851 in due form and recorded. The statute of the state made a certified copy of the record evidence of equal value with the original, and the statutes in force at the time the deed was made provided for the appointment of administrators by the county court and in certain cases by the chancery court. *Held* that, while a certified copy of the record was prima facie evidence of the execution and delivery of the deed, it was not admissible to prove title in the grantee without proof of the administratorship of the grantor, the best evidence of which was the public record of his appointment, and that, while recitals in the deed were sufficient to raise a presumption of such appointment as secondary evidence, they were not competent, in the absence of some showing that the court record thereof could not be produced.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.\*]

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

Suit in equity by Griffin T. Miller and others against Roger W. Butterfield and Thomas M. Peck. Decree for complainants, and defendants appeal. Reversed.

Willard F. Keeney (James A. England and Chester G. Bond, on the brief), for appellants.

J. A. Pitts (Ross & Ross and Pitts & McConnico, on the brief), for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. Appellees (hereafter called complainants) filed their bill to remove cloud from title to a tract of 5,000 acres in Perry county, Tenn., entered by Isaac W. Stanley in 1841. They deraign title from Stanley through deed dated May 22, 1851, by John Montgomery (claimed to have been Stanley's administrator) to Secrist, who conveyed to Stephens August 4, 1855, and by conveyance July 1, 1858, by the clerk and master of the chancery court of Perry county to Brown and Miller (complainant's ancestors) under decree of that court in attachment proceedings brought by Brown and Miller against Stephens. Butterfield and Peck (hereafter called defendants) originally claimed about 2,875 acres of the tract by purchase in 1889 (for value and in ignorance of the Stanley entry and title) from claimants,

under entries made in 1855, 1857, and 1861, respectively, and thus later than the Stanley entry. In 1900, after this suit was begun (but before answer), Butterfield and Peck obtained from Stanley's heirs (for a comparatively nominal consideration) a conveyance of the entire 5,000-acre tract. It is now conceded that the Stanley title is superior to that of the later entrymen, under whom defendants originally claimed; and complainants' title is superior to that of defendants', unless either the deed from Montgomery to Secrist was ineffective to convey Stanley's title or the attachment proceedings in the suit of Brown & Miller v. Stephens, and the deed thereunder, were insufficient to transfer the latter's title. Defendants assail the validity or effect of both these conveyances. They also deny jurisdiction under the bill in this cause, for alleged lack of sufficient possession of the land by complainants. From the decree of the Circuit Court, which adjudged complainants' ownership in fee of the entire tract, and set aside defendants' claim of title as clouds thereon, this appeal is taken.

### 1. Had the Circuit Court Jurisdiction?

[1] Independently of a statute of the state where the land lies, a bill to remove cloud from legal title to land cannot ordinarily be brought, in a court of the United States, by one not in possession of the real estate in controversy; the ground being that complainant in such case has an adequate remedy at law. United States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; American Ass'n v. Williams (C. C. A. 6th Cir.) 166 Fed. 17, 93 C. C. A. 1. There is no statute in Tennessee authorizing a bill to remove cloud from title where neither party is in possession. The proofs show that each party has sufficient possession to maintain suit against strangers to the title, but that the possession of each is of the same general nature; the possession of neither being such as to be effectively exclusive of the other. Under the practice in Tennessee, where neither party is in actual possession, an ejectment suit may be maintained in the chancery court, from which court this case was removed to the federal court. The existence of the remedy in ejectment given by the Tennessee statute would not oust the federal court in equity of jurisdiction over the suit, on the ground of adequacy of remedy at law. American Ass'n v. Williams, supra, at page 23 of 166 Fed., 93 C. C. A. 1. Passing as unnecessary for decision the question whether, in view of the practice and rule referred to, the federal court sitting in equity would have jurisdiction of this case, and the question whether remedy existing in the chancery court of Tennessee could be preserved by a transferring of the case to the law side of the federal court, we think ample jurisdiction is found in the fact that the establishment of the deed from Montgomery to Secrist as the deed of Stanley (including the establishment of Montgomery's alleged administratorship) is necessary to the proof of complainants' title, especially in view of defendants' contention (hereafter discussed) that the deed in question is merely that of Montgomery individually. To say the least, the remedy in ejectment would not be as complete as in equity. We think the jurisdiction is as clear as for the establishment of a

lost deed or a lost power of attorney. Had ejectment suit been instituted, we think a bill in aid thereof would have been proper for the purpose of establishing such deed as the conveyance of Stanley. No reason is apparent why such jurisdiction should not be exercised by an independent bill in equity.

## 2. Did the Deed from the Clerk and Master to Brown and Miller Effectually Convey Stephens' Title?

[2] The suit which resulted in a decree and sale thereunder was brought to collect the amount of a judgment recovered, in a state court of Ohio, by Brown and Miller as plaintiffs against Stephens as defendant. The deed of the clerk and master is in due form. The decree recites that "the defendant has been attached by his property and summoned by publication to be and appear before the court," etc., orders the taking of the bill as confessed for want of appearance, recites the finding of the indebtedness from the defendant Stephens to Brown and Miller, upon the Ohio judgment, and the latter's ownership of the land in question, and orders sale of the same after 30 days' notice to be published for three successive weeks in a newspaper named. The report of sale was confirmed. The attack here made upon the decree and proceedings thereunder is collateral. Against such attack only jurisdictional questions can be considered. Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Simmons v. Saul, 138 U. S. 439, 452, 11 Sup. Ct. 369, 34 L. Ed. 1054; Robertson v. Winchester, 85 Tenn. 171, 1 S. W. 781. With respect to the decree of a court of general jurisdiction the rule is well settled that recitals such as are found here are presumptive evidence of compliance with the steps necessary to the jurisdiction of the court, and (by the better authority) cannot be overcome by extraneous evidence, but only by evidence contained in the record. Cooper v. Reynolds, supra; Robertson v. Winchester, supra; Applegate v. Lexington, etc., Min. Co., 117 U. S. 255, 266, 6 Sup. Ct. 742, 29 L. Ed. 892; 1 Black on Judgments, § 273, and cases cited; Walker v. Cottrell, 6 Baxt. (Tenn.) 257, 273, 274, and cases there cited. And the fact that the jurisdiction of the court over the matter in question is dependent upon statute (as in the case of attachment) does not change the rule as above stated, where the statutory powers are brought into action in the usual form of common law or chancery proceedings, or where the court is one of special jurisdiction as respects the peculiar remedy. Harvey v. Tyler, 2 Wall. 328, 17 L. Ed. 871; Comstock v. Crawford, 3 Wall. 396, 18 L. Ed. 34; Applegate v. Lexington, etc., Min. Co., supra. On the other hand, where the record states the evidence or makes an averment with reference to the jurisdictional feature, it will be understood to speak the truth on that point, and (subject to certain exceptions unnecessary to consider) it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred. Galpin v. Page, 85 U. S. 350, 366, 21 L. Ed. 959; Settlemier v. Sullivan, 97 U. S. 444, 448, 24 L. Ed. 1110; Cheeley v. Clayton, 110 U. S. 701, 708, 4 Sup. Ct. 328, 28 L. Ed. 298; Dick v. Foraker, 155 U. S. 404, 413, 15 Sup. Ct. 124, 39 L. Ed. 201; Old Wayne Life Ass'n v. McDonough, 204 U. S. 8, 17,

27 Sup. Ct. 236, 51 L. Ed. 345; Johnson v. Hunter (C. C. A. 8th Cir.) 147 Fed. 133, 137, 77 C. C. A. 359.

[3] The Tennessee statute in force when the attachment proceedings in question were had (Act Feb. 15, 1836 [Acts 1836], as amended and explained by Act Jan. 27, 1838 [Acts 1838]) permitted such remedy upon affidavit that defendant is a nonresident of the state. The fact that the pleader may have had in mind an inapplicable statute is immaterial; there having been a statute under which the affidavit would be sufficient. No separate affidavit for attachment is presented. The bill of complaint, however, prays for attachment to be levied upon the lands in question, and "that the said William P. Stephens, who is a citizen of the state of Indiana, be made defendant, that publication be made," etc. Such bill may properly constitute an affidavit for attachment. Peak v. Buck, 3 Baxt. (Tenn.) 71; Foster v. Hall, 4 Humph. (Tenn.) 345, 348. And the method of statement referred to as contained in the bill is a sufficient allegation that the defendant therein is "a citizen of Indiana." Walker v. Cottrell, supra; Grubbs v. Colter, 7 Baxt. (Tenn.) 432; Bascom v. Smith, 31 N. Y. 595, 605.

[4] The first important question is whether such reference to Stephens as a citizen of Indiana is a sufficient allegation that such defendant is a nonresident of Tennessee. If so, sufficient jurisdiction for the attachment suit existed, otherwise not. In the Slaughterhouse Cases, 16 Wall. 36, 74 (21 L. Ed. 394), it is said that to make one a citizen of the Union " it is only necessary that he should be born or naturalized in the United States," but that "he must reside within the state to make him a citizen of it." Under the statute making diverse citizenship of parties ground of federal jurisdiction, it has always been held that an averment of diverse residence is not an allegation of diverse citizenship. But the reason for the rule is that citizenship requires not merely residence, but domicile, viz., a fixed and permanent residence. Bingham v. Cabot, 3 Dall. 382, 1 L. Ed. 646; Abercrombie v. Dupuis, 1 Cranch, 343, 2 L. Ed. 129; Morris v. Gilmer, 129 U. S. 315, 328, 9 Sup. Ct. 289, 32 L. Ed. 690; Marks v. Marks (C. C.) 75 Fed. 321, 324. The term "domicile," when used in connection with the attachment laws, is recognized by the courts of Tennessee as involving residence with the intention of making it the home of the party, "the home or habitation fixed in any place without a present intention of removing therefrom." Stratton v. Brigham, 2 Sneed. (Tenn.) 421; Foster v. Hall, 4 Humph. (Tenn.) 345, 348. See, also, Waples on Attachment (1st Ed.) page 39. The cases just cited establish the construction that foreign citizenship implies foreign residence. We find nothing to the contrary in Cain v. Jennings, 3 Tenn. Ch. 131, 136.

The question remains whether an allegation of foreign citizenship prima facie implies an absence of a qualified residence in the state of the forum; because one might have both a foreign residence and also such a local residence as would be inconsistent with the right of attachment. The answer to this question depends to some extent upon the degree of liberality with which the attachment laws are construed by the courts of Tennessee. Speaking generally, it has been

the settled policy of the courts of Tennessee, since as early as 1846, that attachment laws must be liberally construed (Runyan v. Morgan, 7 Humph. [Tenn.] 210; Maples v. Tunis, 11 Humph. [Tenn.] 108, 110, 53 Am. Dec. 779; Hills v. Lazelle, 5 Sneed [Tenn.] 363, 365; Vance v. Cooper, 2 Cold. [Tenn.] 497), although, so far as the statutes prescribe the causes for which attachment may issue, no material departure from the specific requirements of the law has been permitted (Jackson v. Burke, 4 Heisk. [Tenn.] 610; Lillard v. Carter, 7 Heisk. [Tenn.] 604). See, also, Conrad v. McGee, 9 Yerg. (Tenn.) 428, 429.

Turning to the specific decisions of the courts of Tennessee, it was held in Klepper v. Powell, 6 Heisk. (Tenn.) 503, 506, 510, that:

"The allegation of the bill that 'the defendant is not an inhabitant of the state' substantially charges the fact of nonresidence as one ground for the attachment."

And in Grubbs v. Colter, 7 Baxt. (Tenn.) 432, where an attachment bill was demurred to upon the ground, among others, that it contained no allegation that defendant is a nonresident of the state, the court said:

"The bill, after the address, gives the names of the parties complainant and their residence, and then the name of the defendant, and his residence as being 'Lee County, Arkansas,' and proceeds to allege that 'the defendant, a citizen of the state of Arkansas, is justly indebted to them in the sum of $425.52, due by promissory note,' which is exhibited with the bill. We think it is sufficiently alleged that defendant is a nonresident of the state in the statement of his residence in Arkansas, and that this nonresidence gives the chancery court jurisdiction."

The conclusion reached is that the affidavit for attachment was jurisdictionally sufficient under the Tennessee rules.

Defendants introduced the newspaper files for the purpose of showing that the publication of the order of appearance of defendant in the attachment suit was not had as provided by the order. This evidence was extraneous to the record, and was clearly incompetent to impeach the decree. Walker v. Cottrell, 6 Baxt. (Tenn.) 257, 275, 276.

[5] The bill in the attachment suit is criticised as not asking for personal judgment against defendants, with execution for balance uncollected under the attachment. Such personal decree and execution, in a proper case, were provided for by the statute in the words:

"The court shall render such decree as the nature of the case may require, * * * and, should the property attached be insufficient to pay the amount of the decree, an execution may issue for the balance," etc.

The bill contained a prayer for general relief, which is broad enough to cover a personal decree, if one could properly be rendered. But as defendant was a nonresident, and did not appear, and was not personally served with process, personal decree would have been a nullity. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Paper Co. v. Shyer, 108 Tenn. 444, 464, 67 S. W. 856, 58 L. R. A. 173. The decree in fact found Stephens indebted to Brown and Miller in a stated sum. The failure to provide for enforcing the payment of such indebtedness by execution against other property did not affect the

jurisdiction of the court. We find nothing to the contrary of these views in Perkins' Heirs v. Norvell, 6 Humph. (Tenn.) 151, or in Snell v. Allen, 1 Swan (Tenn.) 208. We find no jurisdictional defects in the attachment proceedings.

It follows that in our opinion the deed from the clerk and master to Brown and Miller effectually conveyed Stephens' title.

3. Was the Record of the Deed from Montgomery to Secrist Sufficient Proof of the Effective Conveyance of Stanley's Title?

The original deed was not produced. Its execution and delivery were shown by certified copy from the public record. The material parts of the deed are as follows:

"This indenture made and entered into this 22nd day of May, 1851, by and between, John Montgomery of the one part and Henry Secrist of the other part, the former a citizen of the county and state of Tennessee, and the latter a citizen of Hamilton county and state of Ohio, witnesseth: That for and in consideration of the sum of one hundred dollars in hand paid to the said John Montgomery, the receipt whereof is hereby acknowledged, and this indenture further witnesseth that whereas Isaac W. Stanley in his life bargained, sold and executed his title, and thereby binds himself, his heirs, executors, administrators to make or cause to be made to the said Henry Secrist on the payment of the purchase a good and sufficient legal title to the following described tract of land. Now the said John Montgomery doth bargain, sell and convey as administrator of the estate of the said Isaac W. Stanley the said tract of land hereinafter mentioned and described, to the said Henry Secrist, to wit: [Description follows.] To have and to hold the said tract or parcel of land with its appurtenances to the said Henry Secrist, his heirs and assigns forever, and the said John Montgomery administrator aforesaid binds himself, his heirs and representatives to warrant and defend the title of said land to the said Henry Secrist, his heirs and assigns forever, against any claims to be made by himself, or any claims of any person claiming through or under him the said John Montgomery but no further, this conveyance is made in satisfaction and full discharge of the above-mentioned title bond, which bears date 28th day of January, 1848, and now in the hands of one Adam Peabody, who is at this time in the state of Missouri and cannot be had at this time to be delivered up and cancelled. In testimony whereof the said John Montgomery doth set his hand and affix his seal, in presence of T. M. Brashear, William H. Storme.

"John Montgomery. [Seal.]"

The execution of the deed was acknowledged (as shown by certificate of clerk of county court thereon) by "John Montgomery * * * for the purposes therein contained"; the alleged administratorship not being stated in the certificate. It was recorded on the day of its date. Defendants criticise the effectiveness of the deed (a) as not purporting to be the deed of Montgomery as administrator; (b) because the fact of Montgomery's administratorship is not proved; (c) for lack of proof of the making of Stanley's alleged contract to convey and the payment by the contract purchaser, as well as for insufficiently definite recitals of the terms of the contract. The record contains no direct evidence of either of these facts, unless the recitals in the deed constitute such proof. Complainants contend that the deed plainly purports to be that of Montgomery as Stanley's administrator; that, being an ancient deed, its recitals are presumptive evidence of its truth; and that such recitals establish presumptively the facts of Montgomery's administratorship, and the making and per-

formance of the contract in pursuance of which the deed purports to have been made. The Circuit Court in effect adopted this view. If correct, the deed has the effect of conveying Stanley's title to Secrist, for there is no evidence contrary to the recitals. If the latter have not the effect claimed for them, the decree was wrong.

We have no difficulty in holding that the deed purports to be that of Montgomery as administrator, and not Montgomery's individual deed. This, we think, clearly appears from a consideration of the entire instrument. The instrument is an ancient deed. It was made not merely 30 years, but 50 years before its introduction in evidence. Proof by the register was sufficient proof of its execution and delivery at the date thereof. It was acknowledged in proper form for registry (Code 1858, §§ 2038, 2039), and was so entitled to registration (Code 1858, § 2030, subd. 4). The statute makes a certified copy of such record evidence (Code 1858, § 3791), and the registration is prima facie evidence of execution and delivery. Goodlett v. Goodman Coal & Coke Co., 192 Fed. 775, decided by this court January 3, 1912. Proof of possession under the deed is not indispensable. Applegate v. Lexington, etc., Min. Co., supra. The fact that the original deed is not produced by complainants justifies no inference opposed to the prima facie evidence of execution and delivery afforded by the registry. This is so because complainants, in view of the hostile method by which their ancestors acquired the Stephens' title, would not naturally have had the Montgomery deed. The fact of the recitals cannot be determined on the basis of estoppel against defendants, because, while the latter now claim under the Stanley title, they do not claim under the Montgomery conveyance. Their defense would be as good if they had not taken title from the Stanley heirs, for complainants must recover upon the strength of their own title. But it is well settled that recitals in an ancient deed may be evidence as against parties to the deed, but who do not claim under it. Carver v. Astor, 4 Pet. 1, 7 L. Ed. 761; Crane v. Morris' Lessee, 6 Pet. 598, 8 L. Ed. 514; Deery v. Cray, 5 Wall. 795, 18 L. Ed. 653; Fulkerson v. Holmes, 117 U. S. 389, 397, 398, 6 Sup. Ct. 780, 29 L. Ed. 915; Stockley v. Cissna (C. C. A. 6th Cir.) 119 Fed. 812, 824, 56 C. C. A. 324; Norris v. Hall, 124 Mich. 170, 175, 82 N. W. 832. While it is sometimes broadly stated that recitals in an ancient deed are themselves proof of the facts recited, even as against strangers, we think the real question is whether the facts before the court, including the recitals, justify the presumption that the recitals are true. If in this case there is sufficient presumptive evidence of Montgomery's administratorship, the recitals in the deed are, in our opinion, presumptive evidence of the making of the contract by Stanley to Secrist, the payment by the latter of the purchase price, and thus of the authority of the administrator to convey. Assuming, as we think we must, that the competency of the recitals by the grantor (as a declarant) is to be considered as if the grantor were a witness, it is to be observed that the grantor assumes to speak of his own knowledge. If he was administrator, he would very naturally have had personal knowledge of the truth of the recitals in question. The recitals ac-

count for the nonproduction of the original contract. It was then out of the state, and, for reasons already stated with respect to the Montgomery deed, complainants would not naturally have possession of it even had it come into the possession of Secrist or Stephens. By statute in force in 1851, an administrator was expressly authorized to make conveyance in execution of a written contract for the sale of real estate made by his intestate, although he was not required to do so unless the contract or a certified copy thereof were produced and delivered to him. Shannon's Code, §§ 3692, 3695. Registration of the contract was not necessary to authorize conveyance by the administrator. Carter's Lessee v. Parrot, 1 Tenn. 237. The statement in the Montgomery deed of the terms of the contract from Stanley to Secrist is, in our opinion, sufficiently definite.

We are thus brought to the question whether there was sufficient competent proof of Montgomery's administratorship. We remark, in passing, that this administratorship was not expressly admitted by defendant's answer, and complainant was thus required, under the federal practice, to prove the fact. Brown v. Pierce, 7 Wall. 205, 211, 19 L. Ed. 134; Lovell v. Johnson (C. C.) 82 Fed. 206; In re Doran (C. C. A. 6th Cir.) 154 Fed. at page 469, 83 C. C. A. 265, and cases there cited. The statute in force in 1851 provided that:

"No person shall presume to enter upon the administration of any deceased person's estate until he has obtained letters of administration or letters testamentary." Code 1858, § 2201.

Letters of administration could be granted by the county court, and in certain cases by the chancery court. Code 1858, §§ 2202, 2209, and following. By the Code of 1858, a record was required to be made of letters of administration. But, as we are not sure that this provision existed in or previous to 1851, we shall disregard it for the purposes of this opinion.

[6] The general rule is that if an ancient deed recites an authority under which it purports to be executed, or recites facts equivalent thereto, the recital is prima facie evidence of the authority, provided (as is the case here) acts of ownership have been done under the instrument. See Davis v. Gaines, 104 U. S. 386, 398, 26 L. Ed. 757, where it was held that recitals in an executor's deed of due advertisement of the sale were evidence thereof. In accordance with the general rule above stated, the recital in a deed of a power of attorney, under authority of which it purports to be executed, has in many well-considered cases been held presumptive evidence of the existence of such power. The following cases sufficiently illustrate this rule: Doe v. Phelps, 9 Johns. (N. Y.) 169; Doe v. Campbell, 10 Johns. (N. Y.) 475; Reuter v. Stuckart, 181 Ill. 529, 54 N. E. 1014; Davis v. Pearson, 6 Tex. Civ. App. 593, 594, 26 S. W. 241, and cases cited in opinion. But the rule is declared in numerous decisions that, where the authority under which the deed is claimed to have been executed is a matter of record, the deed is not admissible, however ancient it may be, as evidence of title to land, without the production of the power or an authenticated copy, or explaining the failure to make such production. Tolman v. Emerson, 4 Pick. (Mass.) 160; Green v.

Blake, 10 Me. 16, 18; Winkley v. Kaine, 32 N. H. 268, 276; Shilknecht v. Eastburn's Heirs, 2 Gill & J. (Md.) 114; Fell v. Young, 63 Ill. 106; Reuter v. Stuckart, 181 Ill. 529, 54 N. E. 1014. The rule thus stated meets our approval. In Tolman v. Emerson, supra, the reason for the rule is thus stated:

"If a power be recorded, so that the evidence is perpetuated, there can be no reason for admitting the deed without the power, however ancient it may be, for there is certain proof to be obtained for which a mere presumption ought not to be substituted."

In Reuter v. Stuckart, which involved the presumption of the existence of a power of attorney, the earlier case of Fell v. Young was distinguished, upon the ground that the power there involved was public and statutory.

It is true that in Deery v. Cray, supra, the recitals in the deed, with reference to a will, were considered competent evidence, but in that case the report shows that there was testimony of unsuccessful search for the will. There was in the case before us no proof of either the presence or absence of evidence in the public records of the courts of Montgomery's appointment as administrator, except as there was evidence that a part of the records of the chancery court had been destroyed, but without reference to the records of administration proceedings, and no proof whatever of the loss or destruction of the records of the county court. Stanley's death is proven, but it does not definitely appear whether it preceded the date of Montgomery's deed. The court records either show Montgomery's appointment or they do not. If they so show, Montgomery's deed was competent and sufficient evidence of an effective conveyance of Stanley's title. If they do not so show, the reason therefor is open to proof, whether because of a definitely known loss of parts of the record or of a presumptive loss by reason of a lack of system or attempt to preserve, or because of a practice not to make record; in other words, something to overcome the natural presumption of the making and existence of a public record.

[7] In the case of records of the antiquity of those in question, as strict proof is not required as if they were recent; and, if a considerable part of the record is shown to have been lost, it may (in a case otherwise proper) well be presumed that the record in question existed and was among the lost records. Willetts v. Mandlebaum, 28 Mich. 521; King v. Merritt, 67 Mich. 194, 34 N. W. 389. But we think that, in the absence of any explanation whatever of the failure to produce from the public records evidence of Montgomery's appointment, the recital of administratorship contained in the deed (which recital indeed is not express as to the fact, but only by implication) was incompetent, as not being the best evidence of such appointment. With evidence tending to show the loss or nonmaking of the record, Montgomery's declaration would, under the facts of this case, be competent evidence tending to show the fact of administratorship, as it would not in such case be subject to the objection stated, nor would it be hearsay, as Montgomery would naturally have had knowledge of the existence of his own letters of administration; and,

if he is dead or inaccessible, loss of whatever evidence of authority was conveyed to his personal custody might well be presumed. The recital in the deed being so competent, and contained, as it was, in a deed forming part of the uninterrupted chain of title from Stanley to Brown and Miller, would be sufficient, in the absence of any evidence tending to the contrary, to sustain a presumption that Montgomery was actually appointed Stanley's administrator. But, if there are facts and circumstances pointing in a contrary direction, the ultimate question would be whether all the circumstances, taken together, including Montgomery's recital that he was administrator, sufficiently satisfy the burden of proof resting on the moving party to justify a decree by a court of chancery that the appointment was in fact made.

The record contains some evidence tending, in a greater or less degree, to corroborate the alleged fact of administratorship by way of proof of (1) later actions based on the deed, and (2) the alleged acquiescence by Stanley's heirs. It appears that Stanley's widow and children resided near the land for many years, after his death; that one of the boundaries, both of the Stanley tract and of one of the later entries which defendants have claimed, is a 350-acre tract entered by Stanley; that the tract here in question was publicly sold in Brown and Miller's suit seven years after the administrator's deed was given; that, so far as shown by the record, no claim was made by Stanley's heirs of any title to this property except as, 49 years after the administrator's deed in question, they made the deed to defendants before mentioned; that Stanley had a large number of entries, presumably in this neighborhood, no showing being made as to what became of them. There are other circumstances lending more or less corroboration in the direction stated.

On the other hand, the witnesses whose attention was called to the subject knew no such man as Montgomery in the neighborhood at the time, and, as we have said, there is no evidence on the subject of the existence, now or at any time, of public record. The force of the proof of later actions based on the Montgomery deed depends upon the extent to which Secrist and Stephens or Brown and Miller shall be shown to have asserted title otherwise than by the fact of the conveyances, as well as by the extent of possession by either of these parties; and the force of the alleged acquiescence of the Stanley heirs depends upon the extent to which, under the testimony, they will be shown or be presumed to have known of their father's title to the land in question at his death, as well as of the fact of the claim made in the Montgomery deed. The evidence on many of the points to which we have referred is meager, and the subject is apparently not exhausted.

As the case now stands, viz., in the absence of competent evidence of Montgomery's appointment, there is no basis for finding or declaring the existence of administratorship. For this reason the decree of the Circuit Court must be reversed. A direction that the bill be dismissed for this reason would, however, not be conducive to justice, and such direction should therefore not be made. Noble v. Seary, 223 U. S. 65, 32 Sup. Ct. 194, 56 L. Ed. ——, decided by the Su-

preme Court of the United States, January 22, 1912; Snead v. Scheble (C. C. A. 6th Cir.) 175 Fed. 570, 574, 99 C. C. A. 578. The parties should be given opportunity to present further testimony bearing on the question of Montgomery's appointment, including proof offered by or as to the record of appointment, and the circumstances corroborating or tending to dispute such fact. Such decree should thereafter be made as the record may justify.

The decree of the Circuit Court is reversed, with costs of this court to appellants, and the cause remanded to the District Court, with directions to take further proceedings therein not inconsistent with this opinion. Such amendments to pleadings as may be necessary under the views we have expressed will, of course, be allowed.