## GLEN MARY COAL & COKE CO. v. WOLFE et al.

(Circuit Court of Appeals, Sixth Circuit.    June 5, 1917.)

No. 2969.

1. ADVERSE POSSESSION ⊜⇒103—CONFLICTING POSSESSION BY ADJOINING OWNERS.

Where defendant, owning a tract of land known as tract 1931, had possession for over 30 years of a strip which theoretically was a part of tract 1935, adjoining tract 1931 on the south, the claimed constructive possession of the owners of tract 1935 did not create a conflicting possession, defeating defendant's title, under Shannon's Code Tenn. § 4456, under which adverse possession under a deed for more than 7 years gives an indefeasible title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 590–594.]

2. EJECTMENT ⊜⇒165—JUDGMENT—CONSTRUCTION—MATTERS EXCLUDED FROM DETERMINATION.

In a combined ejectment suit and bill to remove a cloud, in which it was sought to establish the title to coal underlying the land, plaintiff

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

claimed title to the whole of a tract known as tract 1935. The G. Company, owning tract 1931, adjoining tract 1935 on the north, filed an answer alleging that it was the owner of certain specified tracts, one of which was described merely as "entry 1931." The decree found in favor of the G. Company as to four parcels, and then awarded to plaintiff all other land within his boundaries, but then expressly provided that, as to other lands claimed by the G. Company within such boundaries, it was not intended to make any adjudication whatever. The G. Company was in possession of a strip, on the boundary of the two tracts, which was theoretically a part of tract 1935. *Held* that, while there was testimony that the exception in the decree as to lands claimed by the G. Company was intended to reach parcels actually claimed, but not described and claimed in the answer, it was not necessary to resort to such testimony to exclude the strip on the boundary, as the reference to tract 1931 had no possible pertinence, unless it referred to this strip.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 547.]

3. EJECTMENT ⬡165—EQUITABLE EJECTMENT—DECREE—INCONSISTENT PROVISIONS.

The inconsistency between the broad terms of the decree in favor of plaintiff and the specific provisions excluding lands claimed by the G. Company did not deprive such specific provisions of full effect, as the inference was that the draftsman of the decree by mistake had made it too inclusive and later corrected it, especially where this inference was confirmed by testimony that by agreement all parcels except four were withdrawn from the case, that in the lower courts plaintiffs made no claim of title to them, that such claim or title was first urged in the Supreme Court by new counsel not familiar with the agreement, that the Supreme Court, in ignorance of the agreement, approved this claim, and that as soon as this came to the attention of the former counsel it was corrected by inserting in the decree the provision excepting from its operation the tracts claimed by the G. Company other than those specifically adjudicated.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 547.]

Appeal from the District Court of the United States for the Eastern District of Tennessee; John E. McCall, Judge.

Suit by Edith McBurney Wolfe and others against the Glen Mary Coal & Coke Company. From a decree for plaintiffs, defendant appeals. Reversed and remanded, with instructions.

This case involves the location, in fact or by estoppel, of the boundary line between adjacent tracts of mountain land in Eastern Tennessee. In 1836 Eastland and Lane caused a survey to be made covering a large territory which, by this survey, they divided into rectangular tracts, each 1,000 poles east and west by 894 poles north and south, and each containing between 5,000 and 6,000 acres. Thereupon each tract was separately entered. To understand the present controversy, we need to observe the position only of tracts 1930, 1931, 1934, and 1935. They were adjacent to each other, and were, respectively, northwest, northeast, southwest, and southeast of their common center, which common center is recited as the starting point of entry 1935. By the method adopted, the surveyors actually ran and marked on the ground two north and south lines 2,000 poles apart. These lines formed the western boundary of 1930 and 1934 and the eastern boundary of 1931 and 1935. Upon these lines, at intervals of 894 poles, monuments were actually fixed, usually consisting of marked trees. The intervening north and south line, forming the boundary between 1930 and 1934 on the west and 1931 and 1935 on the east, and the east and west lines, one of which formed the boundary between 1931 on the north and 1935 on the south, were not actually surveyed, but each entry corner thereon was called for on the survey as "a stake and pointers."

For present purposes, it is sufficient to state that the land in controversy [1] is a strip 1,000 poles long east and west and 99 poles wide north and south, and constitutes the northerly 99 poles of entry 1935, if the line between 1931 and 1935 is located as it theoretically should be according to the starting point of 1935, as fixed by its entry recitals; while, if in any sufficient way this dividing line was or has become fixed and established 99 poles south of such theoretical location, this strip of land is a part of 1931. So far as affects this parcel, Samuel McBurney, in his lifetime, had the paper title to 1935, and the Glen Mary Company, since 1881, has had the paper title to 1931. As early as 1870 (probably much earlier) the more southerly of these two lines had been run and marked, by some one, and had become known as the "Gall Line." In 1913 this line had been recognized for 40 years as the dividing line between 1931 and 1935; no other line between those entries had been marked or run prior to this controversy; many deeds, including two by McBurney, which intended to call for this dividing line, and approaching it from both sides, had called in terms for the Gall line; and the Glen Mary Company's deed, in 1881, clearly fixed the Gall line as its southern boundary. Continuously, after 1881, the Glen Mary Company was in possession of this strip, by buildings and improvements thereon, and during a great part of the time had been actually mining coal therefrom. For the reasons to be stated, it is immaterial how this Gall line came into existence, although its probable origin may be inferred. 1931, like 1935, had its starting point and its west boundary in an ideal location upon an ideal line. [2] Neither its northwest nor its southwest corner was in fact marked and located. Its east boundary, however, was upon a line which was surveyed, and its southeast corner, like the northeast corner of 1935, consisted of "a hickory in a hollow." Obviously, if the fixed and marked monuments called for along the east boundaries of these entries conflict with the ideal monuments upon the west boundaries, the former must prevail. The testimony tends to show that the Gall line was run from or to the "hickory in the hollow," since its east end is in a hollow and the east end of the line 99 poles north is on a hill. Under these conditions, it cannot be certain that the Gall line may not be the one which ought to prevail, regardless of all matters of recognition and possession.

In 1903 McBurney commenced, in the proper state court of Tennessee, a suit which, under the Tennessee practice, was treated as a proceeding in equity, but was a combined ejectment suit and bill to remove cloud, save that it sought only the establishment of title to and the recovery of possession of the coal underlying the land, and not of the surface. By his initial pleading he claimed title to the entire section 1935, describing it in the words of the entry, but "excluding the coal or mineral under the lands of this boundary known as the Elisha Chaney lands and owned by the defendant the Glen Mary Coal & Coke Company." He made defendants the Glen Mary Company, Carson and Foster, Diden, Young, and the Bartholomews. The Glen Mary Company filed an answer, denying McBurney's title, and alleging that "defendant is the owner and in the possession of the following tracts of land." Here followed descriptions, by metes and bounds, of 10 tracts, each of them under a heading "First Tract," "Second Tract," etc., and which 10 tracts covered a total of about 1,740 acres. The answer then proceeds: "Eleventh Tract: Being entry No. 1931. Twelfth Tract: Being entry No. 1934." Here the answer abruptly stops, without signature or further allegation. The chancery court dismissed McBurney's bill entirely. He appealed to the Court of Chancery Appeals, which affirmed; he then appealed to the Supreme Court of Tennessee,

---

[1] The bill claims the entire of 1935, with certain exceptions. The answer claims title in the Glen Mary Company to many parcels within 1935, and in addition to the 99-pole strip, and the decree might seem to cover some of the other parcels so claimed by defendant; but this 99-pole parcel is the only one to which the testimony is directed. A journal entry recites that the parties in open court agreed that it was the only matter in controversy, and the briefs in this court treat the case in the same way.

[2] We use the word "ideal" in the sense that seems to be common in litigation regarding boundaries of grants in Kentucky and Tennessee, viz., in contradistinction to actual, and as referring to lines or points existing only in the surveyor's notes, and not located by him upon the ground.

which discussed the case in an opinion reported in 121 Tenn. 304, 118 S. W. 694. This opinion shows that the Supreme Court thought McBurney should have had a decree for all lands within his boundary which the Glen Mary Company did not, by its answer, claim, and so directed a decree accordingly, but added, in substance, that, since McBurney had not brought any such claim to the attention of the court below, costs would be awarded against him.

The parties were represented in the Supreme Court by other counsel than those who had appeared below, but after a decree, awarding to McBurney all lands within 1935 with specified exceptions, had been prepared, it came to the attention of counsel who had represented the Glen Mary Company below. He testified in this, the instant case, and it is not disputed, that at the taking of the testimony in the chancery court he gave notice that he intended to amend the answer by adding other tracts than the 12 within the boundary sued for, to which other tracts the Glen Mary Company then claimed title, and it was then agreed between all counsel that the litigation between McBurney and the Glen Mary Company should be confined to a certain number (perhaps 4) out of the 12 tracts specified in the answer, and that, as to the remainder, no testimony should be taken and no adjudication would be sought. He further testified that, when the case was heard before the chancellor, he furnished to the court a written memorandum showing these 4 (?) tracts, followed by the statement, "While the Glen Mary Coal & Coke Company owns other tracts inside of the boundary sued for, the tracts above referred to are the only ones in litigation," and he says that this statement was, in open court assented to by opposing counsel. He further says that, when he noticed the form of the decree of the Supreme Court, as prepared, he observed that, while it awarded to the Glen Mary Company all of the four tracts which had actually been in controversy, it seemed, by general terms, to award to McBurney all the remaining tracts within the boundary, which tracts were owned or claimed by the Glen Mary Company, and which this agreement had excluded from the litigation. Thereupon, at his request and by the consent of McBurney's counsel, the following paragraph was inserted in the decree and became a part of it as entered: "And it is further ordered, adjudged, and decreed that, as to all other lands claimed by the Glen Mary Coal & Coke Company within the boundaries sued for, no recovery is sought, and the relative rights of the complainant and said Glen Mary Coal & Coke Company are not adjudicated."

This decree was in 1907. Defendant continued in the undisturbed and unquestioned use and possession of the premises until, in December, 1913, McBurney's widow and heir filed, upon the equity side of the court below, a bill of complaint against the Glen Mary Company, in which they prayed that their title be confirmed, and that defendant's title be removed as a cloud, and that plaintiffs be put in possession of the property, and that the defendant account for coal removed. There was, eventually, a final decree accordingly, and after an accounting before a master, an award of damages; and the Glen Mary Company brings this appeal.

W. R. Turner, of Knoxville, Tenn., for appellant.

S. B. Smith, of Chattanooga, Tenn., for appellees.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). 1. We pass, without deciding, the question whether the court below, as a court of equity, had jurisdiction of this case in spite of the fact that defendant was in the actual adverse possession. Butterfield v. Miller (C. C. A. 6) 195 Fed. 200, 202, 115 C. C. A. 152. The parties have not raised this question. The recent statute (section 274a, Judicial Code [Act March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. 1916, § 1251a)]) has made it unimportant in matters arising since the statute was passed, and we prefer to dispose of the case upon the merits.

[1] 2. It is the statutory law in Tennessee that actual possession, under adverse claim and under a deed, held for more than 7 years, is a perfect bar against a superior paper title, and that this bar extends to the entire tract as described in the defendant's deed. Shannon's Code, § 4456; Earnest v. Land Co., 109 Tenn. 427, 75 S. W. 1122; Mayse v. Lafferty, 1 Head (Tenn.) 60. It follows that the question to which most of the testimony has been directed—viz. whether the Gall line must be taken as the true south line of 1931—is wholly immaterial; defendant's established, and, indeed, unquestioned, possession for more than 30 years is the end of the case, except for the question of estoppel by judgment. True, plaintiffs suggest a conflicting possession; but it is only by construction through actual possession outside of the overlap, while defendant had actual possession of the overlap itself, and this constructive possession is insufficient. Byrd v. Phillips, 120 Tenn. 14, 23, 111 S. W. 1109.

[2] 3. Plaintiffs at last rest upon the claim that the title was adjudicated by the Supreme Court decree. We are unable to find any sufficient basis for this claim. If the decree had remained in the form in which it was drafted, it would still, in view of the opinion, have contained certain ambiguities as to its effect upon the parcel of land now involved, and the attending circumstances would have required that every ambiguity should be resolved against plaintiffs' present claim. This was a very valuable parcel. It had been in the exclusive and undisturbed possession of the defendant for over 20 years. Neither party had taken any proof whatever regarding it, and the plaintiffs, in the court below, had made no claim to it. It is incredible that either party could have supposed that it was involved in the litigation, or would have deliberately contended that the decree ought to cover it. However, the paragraph inserted in the decree leaves no ambiguity. The proposed decree affirmed the action of the lower courts in favor of the Glen Mary Company as to all 4 of the parcels about which there had been an actual controversy. Then, by a general phrase, it awarded to the plaintiffs all other lands within their boundaries. Thereupon this paragraph expressly provided that, as to the other lands claimed by the Glen Mary Company within these boundaries, it was not intended to make any adjudication whatever. It is not necessary to resort to the testimony of the counsel that this exception was intended to reach, also, parcels which were actually claimed, but which he had not described and claimed in his answer; for we find that the parcel in dispute is one of those claimed in the answer. The claim under the head "Eleventh Tract" must refer to this parcel. This eleventh tract so claimed is described only as "being entry 1931"; but since the tract sued for was 1935, and since this reference to the eleventh tract could have no possible pertinence in the answer, unless it referred to something that might be within the boundaries sued for, and since no part of 1931 could possibly be in 1935, excepting through an overlap, actual or claimed, and since this overlap was the very thing which was claimed to give to defendant a part of the ideal 1935 under defendant's deed to 1931, it is clear to a demonstration that this reference in the answer to the eleventh tract was intended to reach this very parcel, and to

present a claim that plaintiffs could not recover this parcel because it really belonged in 1931. Not only is this the natural, if not the inevitable, construction to be put upon this claim of title to the eleventh tract, after we know the conditions which make the situation intelligible, but to give it any other construction would be to make it meaningless and futile. With this construction, it is clear that the title to this parcel, as well as to all the other parcels claimed by the defendant, and which had not by earlier parts of the decree been awarded to the defendant, was left untouched by the decree, and the claim of res judicata must fail.

[3] It is said that to take this view of the later paragraph in the decree neutralizes what had, in the earlier paragraphs, been adjudged, and that, for this reason, such a construction cannot be right. To some extent this premise is true. So far as the general language of the decree awarded to plaintiffs all lands within the boundary not claimed by the defendant the Glen Mary Company, this general language remained operative; but the fact that the broad terms of the earlier part of the decree are inconsistent with specific provisions found later therein can cause no hesitation in giving to the specific provisions precise and full effect. The inevitable inference from the face of the decree in connection with the opinion and the pleadings would be that the draftsman of the decree, by mistake, made it too inclusive, and later corrected this mistake by apt words. This inference, which would be sufficiently supported by the record itself, is confirmed by the testimony showing that all these other parcels were, by agreement, withdrawn from the case in its early stages; that plaintiffs, in the lower courts, made no claim of title to them; that such claim of title was first urged in the Supreme Court, and by new counsel not familiar with the agreement; that the Supreme Court, in ignorance of the agreement, approved the claim of the new counsel; and that, as soon as this came to the attention of the former counsel, the blunder was corrected by the consent of everybody. The general phrasing of the earlier paragraph was allowed to stand for whatever benefit it might be to plaintiffs as against other defendants, but the Glen Mary Company fully protected itself by insertion of the amendment.

This view of the result of the litigation in the state court is made entirely consistent and natural by observing that the title to this 99-pole strip was not put in issue by the pleadings in that case, unless by that very eleventh paragraph of the answer which also serves to take it out of the decree, and by the inference—which we think a fair one—that McBurney did not care to litigate with the Glen Mary Company its claim of title to any of the tracts of which it was in possession, excepting as to those 4 tracts where there had been a severance of the coal in the ground from the surface fee, and where, therefore, he thought he might prevail against the statute of limitations; but on this, his only substantial theory, the Supreme Court held against him.

The decree is reversed, and the record remanded, with instructions to dismiss the bill.