AMERICAN ASS'N v. WILLIAMS et al.

(Circuit Court of Appeals, Sixth Circuit. December 23, 1908.)

No. 1,817.

1. QUIETING TITLE (§ 12*)—CLOUD ON TITLE—POSSESSION.
    Independent of a statute of a state where the land lies, a bill to remove a cloud on title will not lie where complainant is not in actual possession.
    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 8; Dec. Dig. § 12.*
    Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.]

2. COURTS (§ 371*)—FEDERAL COURTS—QUIETING TITLE—EFFECT OF STATE STATUTE.
    Where by a local statute a bill will lie to remove a cloud on title independent of possession, such right may be enforced by a federal court of equity if some ground of federal jurisdiction appears.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 973; Dec. Dig. § 371.*]

3. COURTS (§ 363*)—FEDERAL COURTS—JURISDICTION—STATE STATUTES.
    Code Tenn. 1884, § 5043, giving Tennessee chancery courts jurisdiction in all matters of law except for nonliquidated damages, is ineffective to enlarge the equitable jurisdiction of the courts of the United States sitting in Tennessee, so as to justify them in trying cases justiceable in courts of common law.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 902; Dec. Dig. § 363.*
    Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

4. REFORMATION OF INSTRUMENTS (§ 2*)—MISTAKES—NATURE OF RELIEF.
    The remedy given by Act Tenn. Nov. 22, 1809, c. 101 (1 Scott's Revisal, p. 1192), authorizing the reformation of mistakes in deeds, grants, or other instruments where, by fraud, mistake, or accident, they do not speak the intention of the parties, by an action at law, is applicable wheth-

er the petitioners be in or out of possession, and the proprietors of interests adversely affected, including the state, are barred if notice is given.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 2; Dec. Dig. § 2.*]

**5. EQUITY (§ 50*)—STATUTORY REMEDIES—TITLE TO AND POSSESSION OF LAND.**
Code Tenn. 1858, § 3231 (Shannon's Code 1896, § 4972), providing that ejectment may be brought against the actual occupant if any, and, if none, against any person claiming an interest therein or exercising acts of ownership at the commencement of the action, does not oust the original jurisdiction of equity under such circumstances.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 148; Dec. Dig. § 50.*]

**6. REFORMATION OF INSTRUMENTS (§ 30*) — EQUITY JURISDICTION — STATUTORY REMEDIES.**
Act Tenn. 1809, c. 101 (1 Scott's Revisal, p. 1192), authorizing the reformation by courts of law to give effect to deeds and grants so as to make them operate as valid conveyances of the land intended to be granted or conveyed without formal reformation by a court of equity, does not deprive equity of jurisdiction to reform grants containing a misdescription of the land intended to be conveyed, where the errors to be corrected do not appear on the face of the instruments and must be shown by evidence dehors.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 117, 118; Dec. Dig. § 30.*]

**7. REFORMATION OF INSTRUMENTS (§ 19*)—DESCRIPTION—"MUTUAL MISTAKE OF FACT."**
A mistake in a conveyance as to the subject-matter surveyed, superinduced by ignorance of the true description of the land which the grantor intended to sell and the grantee intended to buy, when participated in by both parties, is a "mutual mistake of fact" which equity will correct.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–76; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, vol. 5, pp. 4650–4651.]

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Jesse L. Rogers, for appellant.
G. W. Pickle, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a bill to reform a patent and certain mesne conveyances which follow the erroneous calls of the patent in respect to the description of the lands conveyed, and to cancel a deed from the defendant Williams to his codefendants as a cloud upon the title of the complainant. The bill as amended was dismissed upon several grounds, though, upon critical analysis, they all, in substance, raise the question as to whether the complainant states a case relievable by equity.

Both parties to the controversy claim under the same patent. Complainant's title is as follows: First, a grant made September 13, 1855, by the state of Kentucky to one Levi Harp, being grant No. 3,290; second, a conveyance of the granted lands by the heirs of Levi Harp to one W. D. Williams; third, a conveyance from Williams to C. H. Rogers; fourth, a conveyance by Rogers to the American Association, Limited, a corporation; fifth, a conveyance to the American Associa-

tion, Incorporated, of all the lands owned by the American Association, Limited, under a decree and sale made in a mortgage foreclosure and winding-up proceeding in the court below.

The defendants, other than W. D. Williams, are alleged to claim under a deed made by W. D. Williams, the grantor in the second link of complainant's claim of title, made long subsequent to the conveyance by Williams to Rogers, under whom complainant holds. The land involved is valuable for coal, and is not, and never has been, within the actual occupation of either party. It lies between the present southern boundary line of the state of Kentucky and a boundary originally claimed by Kentucky some miles south of the true present line. The controversy as to the true line between the two states was adjusted by a compromise agreement between the states of Tennessee and Kentucky of February 2, 1820, and appropriate legislation, by which the present line was recognized as the true boundary between the states, and the right to grant the vacant public lands lying within the contested territory was conceded to the state of Kentucky. 2 Haywood & Cobb's Revisal of Tenn. Laws, 224. The history of this adjustment is found in the case of Sharp v. Van Winkle, 12 Lea, 15, where it was held that this legislative adjustment constituted a grant by the state of Tennessee to the state of Kentucky of all the lands lying in the disputed strip of territory then ungranted by either state, and brought lands held under Kentucky grants made thereafter within the meaning and protection of the statutes of limitation applicable to lands granted by the state of Tennessee. Thus we must, in legal effect, regard the title to this tract of land as originating in the state of Tennessee, the state of Kentucky being the second grantor in the chain of title.

The controversy over the title arises out of a mistake made in the grant to Harp. It is averred that, as required by law and in preparation for the grant, Harp had a survey and plat made of the land for which he intended to seek a patent, and that he had had the line marked upon the ground according to his survey and plat. The second line of the survey was "north 23 degrees east, 70 poles to a chestnut oak." This line in the grant reads: "north 23 degrees west, 70 poles to a chestnut oak." This blunder throws the land described in the grant clear off the surveyed land, so that, if the lines of the grant be run according to courses and distances, it will include a mere fragment of the land actually surveyed and intended to be granted. This mistake was due to an error in the certificate of survey filed by the surveyor. One object of the bill is to have this error in the grant corrected, so that the description will follow the actual survey. It is next averred that Levi Harp died intestate, seised of the lands so granted, and that his heirs conveyed the same to the defendant Williams by a deed referring to the patent by number as the lands therein granted. The bill then avers that Williams, one of the defendants, sold that part of the Harp tract lying "south of the top of the mountain between Clear fork and Valley creek to one C. H. Rogers." This sale was by the acre, and, for the purpose of ascertaining the number of acres, a survey was made. This survey in the main followed the misdescription of the grant. The deed to Rogers gives the erroneous courses and distances of this sur-

vey, and covers little or none of the land actually granted to Harp if the error in the Harp grant be corrected by the Harp survey. It is averred that Williams owned no land other than that he had acquired from the Harp heirs, and that he intended to convey to Rogers the very land which he had acquired from them. That this was his purpose is plainly shown by the fact that he describes the land conveyed as land granted to Harp and by calling for lines of that grant. In addition to the intent shown by these references to the Harp grant, it is averred that Williams in making this conveyance to Rogers was only keeping an agreement, made before he bought from the Harp heirs, to sell to Rogers a part of that tract, and that in a subsequent litigation involving other land he had testified that he had sold the greater part of the Harp tract to C. H. Rogers, and that the defendants H. Y. Hughes, J. T. Hughes, and John P. Davis knew that he had so conveyed said lands, and had so testified before they took the deed from him under which they now claim. The deed from Rogers to the American Association, Limited, described the land as in the deed of Williams to Rogers, and the complainant holds the title thus acquired through a mortgage foreclosure and other judicial proceedings upon the equity side of the court below.

The jurisdiction of the court as a court of equity to entertain this as a bill to remove the cloud upon the title of the complainant by reason of the deed of the defendant Williams to his codefendants, H. Y. and J. T. Hughes and John P. Davis, is denied, because the remedy at law is said to be adequate and the complainant not in actual possession of the premises.

The settled rule of the Supreme Court of the United States seems to be that, independently of a statute of the state wherein the land lies, a bill to remove a cloud upon the title of a complainant will not lie where he, the complainant, is not in actual possession of the premises, and that such a bill must show a legal title and actual possession. Only in such circumstances will a bill lie as a bill quia timet to protect and quiet such possession by the cancellation of an instrument which may disturb such possession or cloud the legal title. Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Dick v. Foraker, 155 U. S. 404, 414, 415, 15 Sup. Ct. 124, 39 L. Ed. 201; United States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110. But where by a local statute a bill in equity will lie to remove a cloud independently of possession, the enlarged equitable right thus created may be enforced by an equity court of the United States where there exists the requisite diversity of citizenship or some other ground of federal jurisdiction. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167. Section 5043, Code Tenn. 1884, confers upon the Tennessee chancery courts jurisdiction in all actions at law except actions for unliquidated damages. Under this statute a Tennessee chancery court may entertain a straight bill of ejectment. Frazier v. Browning, 11 Lea (Tenn.) 253. But this statute cannot enlarge the equitable jurisdiction of the courts of the United States sitting in Tennessee so as to justify them in trying cases properly justiceable in courts of common law. United States v. Wilson, 118 U. S. 86, 90, 6 Sup. Ct. 991, 30 L. Ed. 110.

If the complainants have an adequate remedy at law, they must, under section 723, Rev. St. U. S. (U. S. Comp. St. 1901, p. 583), resort to a court of law. United States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110.

Section 3231, Code Tenn. 1858, authorizes an action of ejectment by one having the legal title and the right of immediate possession against one not in possession but claiming an adverse title. That statute confessedly enlarges the remedy at common law, for at common law the defendant must be in actual possession of some part of the premises, but it does not give the equitable remedy given by the statutes of many states, notably the statutes of Kansas, Nebraska, and Iowa, to file a bill to remove a cloud from the title of one not actually in possession. But if this bill seeks some relief, which is within one of the established heads of equitable jurisdiction, it will be entertained, and if an equity court has jurisdiction of a cause for one purpose it may grant full relief rather than send the complainant to a court of law for part of his relief. Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 275, 53 C. C. A. 551. The real question then is, whether, upon the facts stated in the bill and the prayers for special and general relief, the complainant may maintain its bill for any purpose, the remedy at law in that respect not being full and adequate. Among other matters, complainant seeks the reformation of the grant to Levi Harp so that it shall conform in description to the survey made by Harp upon which the grant issued. It also seeks to reform and correct the deed from Williams to Rogers, and from Rogers to the predecessor of complainant in title, so that they shall conform to the grant as corrected and with the intention of the parties. There is a statute of Tennessee which provides a remedy at law for the correction of errors in grants and deeds of conveyance. Act Nov. 22, 1809, c. 101 (1 Scott's Revisal Laws Tenn. p. 1192). The act referred to deals particularly with the correction of errors in grants by providing for a proceeding in the Circuit Court, a court of law, for the reformation of the patent in respect of errors in the calls for courses, distances, or names due to errors in the plat or in the certificate of survey, by which the grant shall be made to conform to the actual survey, and for like relief in respect of subsequent conveyances of the land so patented. For the latter purpose the ninth section provides as follows:

"That in all cases where any error shall exist, in any grant issued by the state of North Carolina, or by the state of Tennessee, whereby the courses and distances called for in said grant, do not include the land actually surveyed or intended to be granted; and the grantee in said grant shall have sold and conveyed the land so granted to him by said grant, to any person or persons, and shall have described the land in said deed, by the courses and distances called for in said grant, and not by such courses and distances as will include the land actually surveyed, such deed of conveyance shall be held and received as evidence of the sale and transfer of the right to the land actually intended to be granted; and in all cases where any assignee of such grantee, or person claiming under said grantee, shall heretofore, by a petition, have obtained any such erroneous grant to be amended by the Secretary of North Carolina, or by the Secretary of the state of Tennessee, or may hereafter procure the same to be amended, agreeable to the laws of this state, such assignee, or person petitioning, shall and may read in evidence to support his, her or their title to the land so intended to be granted, such deed or deeds so made agreeable to the courses and distances of said grant as issued origi-

nally by the state of North Carolina; and in all cases where the original grant shall be altered by the order of any of this state, such alterations shall enure to the benefit of the purchaser or purchasers of the same or their assignees, in manner aforesaid, any law to the contrary, notwithstanding; and all corrections of errors, either in plats, certificates, grants, mesne conveyances, registrations, &c. made in pursuance of this act, shall be good and valid both in law and equity."

It has been suggested that this act of 1809 applies only to the correction of errors in courses and distances of grants made by the state of Tennessee and North Carolina, and does not in any way effect a grant from the state of Kentucky of lands situated in Tennessee. But we are of a different opinion. The act antedated the act under which Tennessee conceded to Kentucky the right to dispose of the vacant public lands within the disputed boundary lines. For this reason the act specifically refers only to grants from the only states then having the power to grant lands within the limits of the state. The Tennessee statute of limitations, applicable to lands (section 2763, Code Tenn. 1858), applies in terms to lands "granted by this state or the state of North Carolina." But it has been held that lands lying north of the line 36° 30′ and the present northern line of the state, which were vacant and ungranted at the date of the compromise act of February 2, 1820, were by that act "granted" by the state of Tennessee to the state of Kentucky within the meaning of the statute of limitations. Sharp v. Van Winkle, 12 Lea (Tenn.) 15. The principle of that case makes this act of 1809 applicable to lands held under grants from the state of Kentucky, that state being, in legal effect, a grantee from the state of Tennessee as to vacant lands within the border strip referred to by the act of 1820. But it is said this act of 1809 has been repealed by the adoption of the Tennessee Code of 1858, the same having been omitted from that compilation. But section 43, Code Tenn. 1858, provides expressly that "occupant, entry and other land laws are not repealed."

This act, so far as it deals with the question of the correction of grants and surveys, is such an act as comes clearly within that body of laws referred to in the section above mentioned as "other land laws" which are not repealed. The act was classified by Mr. Meigs in his great Digest of Tennessee Laws with "other land laws," and was carried into the extended edition of that Digest issued in 1881 by Judge W. A. Milliken. The best test of its life as an existing law, however, is found in its purpose. Conceding that the general expression "land laws" applies to that body of local law regulating the surveying, occupancy, entry, and granting of the public lands of the state, this law, as one pointing out the method in which errors in such locations or surveys or in the courses and distances of grants might be speedily corrected and every such instrument made to conform to the actual survey as controlling, is essentially within the intent of the saving clause of the Code by which "occupant, entry and other land laws" should not be repealed by implication. The reformation and correction of deeds, grants, or other instruments where, by fraud, mistake, or accident, they do not speak according to the intention of the parties, is one of the oldest heads of equity jurisdiction. This statute of 1809 had its origin in the peculiar perplexities due to the manner in which the

public lands in Tennessee were disposed of, and the necessity for a remedy by which errors and mistakes in the location of entries and discrepancies between the calls and courses of the patents and those of the survey, as actually marked down upon the ground, might be corrected, and the titles of owners speedily settled against adverse claims originating in such errors and mistakes. The remedy is applicable, whether the petitioners be in or out of possession, and proprietors of interests adversely affected are barred, if notice be given, by the proceedings. Miller v. Holt, 1 Overt. (Tenn.) 49; Malseley et al. v. Kensinger, 2 Yerg. (Tenn.) 72. The state, having authorized the proceeding, is concluded by any correction of errors made in any of its grants, although other public lands may be affected. Cases cited above. The rights of innocent purchasers without notice are also saved. Miller's Lessee v. Holt, 1 Overt. (Tenn.) 111. In the case at bar neither party is in possession. The land is valuable for its coal and timber only. The common-law remedy by ejectment is not available, because the defendants, claiming an adverse interest originating in the erroneous calls of the grant, under which both claim title, are not occupying any part of the land. That a statutory action of ejectment against one claiming adversely though not actually in possession now exists (section 3231, Code Tenn. 1858), does not oust the original jurisdiction of equity (Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819). The ancient right of reformation of an instrument, which through accident, fraud, or mistake does not carry out or express the real intent of the parties, is one of the well-known heads of equity jurisdiction. The act of 1809 enlarges, or amplifies, the equitable right of one injured by misdescription, though the enlargement is in the form of a remedy, so that a grant or patent of public lands may be corrected without bringing the state before the court, and extends the same relief to grantees from the patentee when the subsequent conveyances repeat the original misdescription of the grant, and makes every such correction of the patent inure to the benefit of all subsequent conveyees. The enlarged statutory equitable right is one which may be rightfully enforced in the Circuit Court, federal jurisdiction existing by reason of diversity of citizenship. Broderick's Will, 21 Wall. 503, 509, 22 L. Ed. 599; Parker v. Overman, 18 How. 137, 141, 15 L. Ed. 318; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. In the Case of Broderick's Will, cited above, Justice Bradley, in considering the effect of a California statute which conferred upon a court other than a court of probate power to set aside a will obtained by fraud or undue influence as an enlargement of the equitable right to cancel a document obtained by fraud which might be enforced in a United States Circuit Court when federal jurisdiction existed, said:

"Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts, as well as by the courts of the state. And this is probably a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding. Indeed much of equitable jurisdiction consists of better and more effective remedies for obtaining the rights of parties."

In Parker v. Overman, cited above, the question of equitable jurisdiction to enforce an equitable right created by a statute of Arkansas was involved. The statute provided that where lands had been sold by a sheriff or other public officer the purchaser might, for the security of his title, institute a proceeding in the nature of a proceeding in rem, calling upon all persons to come in and show cause why the sale should not be confirmed. It was held that, where the title of a citizen of another state was involved, the suit might be removed to a federal court and tried upon the equity side. The court said:

"The proceeding, though special in its form, is in its nature but the application of a well-known chancery remedy; it acts upon the land, and may be conclusive as to the title of a citizen of another state. He is, therefore, entitled to have his suit tried in this court, under the same conditions as other suits or controversies."

It is upon this principle that the courts of the United States have entertained jurisdiction of bills to remove clouds from the title of real property regardless of the complainants' possession, where, by local statute, a remedy in such circumstances has been given. Independently of the right of reformation conferred by this act of Tennessee, and the effect upon subsequent grantees of a correction of the patent made by a proceeding under that act, there are a line of decisions by the Supreme Court of Tennessee which have been so long adhered to as to constitute a rule of property that, where a grant departs from the calls and courses of the original survey upon which it is based, either through an error in the plat or the certificate filed by the surveyor, or through an error occurring in the land office in copying the courses and distances from the certificate of survey, the law corrects such errors upon evidence, and that the grant will be held to convey the land actually surveyed, although the calls for courses and distances do not cover any part of the lands so surveyed. Garner et al. v. Norris' Lessee, 1 Yerg. (Tenn.) 62, following the North Carolina case of Person v. Rountree, 2 N. C. 379; Nolen v. Wilson, 5 Sneed (Tenn.) 332, 337; Dyer v. Yates, 1 Cold. (Tenn.) 138; Staub v. Hampton, 117 Tenn. 706, 101 S. W. 776. The same cases hold that evidence of an original survey of the ground may be made by parol in actions at law, and the land so surveyed recovered without any reformation of the grant as the land actually conveyed under the patent thus corrected. These cases also hold that this rule of property applies to like mistakes and errors in deeds and conveyances of lands between private parties. As to this, see particularly 117 Tenn. 732, 101 S. W. 776 et seq., where the earlier cases are discussed.

But this local rule of real property, enabling a court of law to give effect to grants and deeds so as to make them operate as valid conveyances of the lands intended to be granted or conveyed, without any formal reformation by a court of equity, does not operate to deprive courts of equity of their jurisdiction to reform grants and deeds in just such particulars. Aside from any enlargement of equitable rights under the Tennessee act of 1809, which we have considered, the jurisdiction of a court of equity may be invoked for the purpose of reforming and correcting errors in grants or deeds in complainant's chain of title, thus clearing its title of the cloud cast by reason of an erroneous de-

scription of the lands conveyed. The errors sought to be corrected do not appear upon the face of the instruments, and must be shown by evidence dehors, evidence liable to be lost or diminished by time, evidence which would not be admissible under the general principles of the common law in an action to recover the land. Clearly the law does not afford a full, complete, and adequate remedy under such circumstances.

But counsel for appellees have urged with some force that, if it is a "rule of property" in Tennessee that a grant or deed will be effective as a conveyance of the property actually surveyed and marked on the land intended to be conveyed, notwithstanding a departure from such survey in the description in the grant or deed, it should apply to the deed by Williams to Rogers, as that deed was made according to an actual survey on the land intended to be conveyed. But there was a mutual mistake regarding the location of the Harp grant. Intending to convey land covered by that grant, but ignorant of the error in its calls and of the actual survey upon which it issued, Williams made a survey, not for the purpose of settling any disputed line, but for the purpose of ascertaining the acreage in a definite part of the Harp land, and, by reason of the error in the calls of the grant, surveyed lands wholly outside of that grant, land which at that date was vacant public land or within the undisputed lines of other parties. A mistake as to the subject-matter surveyed, superinduced by ignorance of the true location of the land which one intended to sell and the other to buy, when participated in by both parties, is such a mutual mistake of fact as equity will correct. The purpose of Williams to convey to Rogers a part of the land he had acquired from the heirs of Harp is utterly defeated unless this deed can be corrected, in which case the title would be in W. D. Williams, whose deed from the Harp heirs preceded any survey subsequent to that of Harp, upon which the grant issued, and described the land conveyed only by reference to the Harp grant. This was precisely the theory upon which Williams was induced to make a second conveyance to his codefendants. In this latter conveyance he goes upon the true assumption that the grant to Harp was a good conveyance of the land which he actually surveyed, and conveys accordingly. His conduct in this matter is subject to severe criticism, and, if suffered to stand, will operate as a fraud upon the complainant. His grantees, it is averred, knew the precise facts, and therefore stand in his shoes.

There is an ambiguity in his description of the lands conveyed. The calls for courses and distances of the grant to Harp, and the description of the land conveyed as being a part of the land granted to Harp, are in conflict with the courses and distances of the Harp grant when that is properly located. The land actually surveyed by Williams, in order to make his conveyance to Rogers, was, by mutual mistake, not the land which the one intended to buy and the other to sell. There was therefore a mutual mistake about the subject-matter, and equity will reform the description so as to conform to the intention of the parties when that intention is plainly made out. 2 Pom. Equity, § 870.

The decree sustaining the demurrer must be reversed and the cause remanded, with direction to overrule the demurrer and take such other steps as may not be inconsistent with this opinion.