WILLIAMS et al. v. AMERICAN ASS'N, Inc.

(Circuit Court of Appeals, Sixth Circuit.   June 26, 1912.)

No. 2,184.

1. APPEAL AND ERROR (§ 1111*)—DECISION AS LAW OF CASE—IDENTITY OF QUESTIONS IN ISSUE.
    A decision on demurrer by an appellate court on the facts alleged in the bill is an adjudication of the rights of the parties to that extent where the proof sustains such allegations, but not where it is materially different.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4411–4420; Dec. Dig. § 1111.*]

2. REFORMATION OF INSTRUMENTS (§ 19*)—DEED—MUTUAL MISTAKE IN DESCRIPTION.
    Defendant contracted to sell to complainant's grantor a tract of land described as being that covered by a grant from the state, giving the number and date of the grant, the quantity, and the name of the grantee, from whose heirs defendant had purchased it. Neither party knew the boundaries, and it was agreed that it should be surveyed and paid for by the acre. The survey was made from the description in the grant, but because of an error in one of the calls therein given the land was not correctly located, and the survey, in fact, embraced only about two acres of the grant as originally surveyed on the ground. The description in the deed given followed the survey. The grant was included within the boundaries of a larger, but later, grant, also purchased by complainant, which desired this grant to complete its title to the larger tract. Held that, while the description in the deed was that intended, through a mutual mistake of fact it was not of the land intended to be sold and purchased, and that complainant was entitled to have the deed reformed so as to cover the land intended.
    [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. REFORMATION OF INSTRUMENTS (§ 17*)—DEED—RIGHT TO MAINTAIN SUIT.**

The fact that a deed contains a warranty only against parties claiming under the grantor does not affect the right of the grantee to maintain a suit to reform a prior deed in his chain of title for mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 69-71; Dec. Dig. § 17.*]

**4. LIMITATION OF ACTIONS (§ 19*)—STATUTE APPLICABLE—"SUIT FOR LANDS."**

A suit to reform a deed by correcting the description, and to quiet complainant's title to the land as correctly described as against a second grantee from the same grantor, is one "for lands" within the meaning of Shannon's Code Tenn. § 4458, prescribing limitation for such suits, and, under the Tennessee decisions, the statute cannot be pleaded by a defendant who has never been in possession.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 74-78; Dec. Dig. § 19.*]

**5. CORPORATIONS (§ 614*)—INSOLVENCY PROCEEDINGS—SALE OF PROPERTY.**

In a stockholder's suit to wind up a corporation as insolvent, it is not necessary that all the property of the corporation should be specifically described in the bill to give the court jurisdiction to sell the same.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2435, 2437–2444; Dec. Dig. § 614.*]

**6. CORPORATIONS (§ 578*)—REORGANIZED CORPORATION—RIGHT OF ACTION.**

Where a corporation was reorganized and the new corporation purchased all of the property of the old, which was sold in foreclosure and creditors' suits, and was awarded the surplus and treated by the court as the successor of the old company in all respects, it succeeded to all rights of its predecessor, including the right to maintain a suit to reform the description in a deed to property which was a part of that sold.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2310–2312; Dec. Dig. § 578.*]

**7. REFORMATION OF INSTRUMENTS (§ 32*)—DEFENSES—LACHES.**

The right to maintain a suit to reform a deed which did not describe the property intended to be conveyed *held* not barred by laches, where the mistake was not discovered until the year previous to the suit, and defendants had never been in possession of the land.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 119-121; Dec. Dig. § 32.*]

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Suit in equity by the American Association, Incorporated, against W. D. Williams, H. Y. Hughes, J. T. Hughes, and John P. Davis. Decree for complainant, and defendants appeal. Affirmed.

G. W. Pickle, of Knoxville, Tenn. (H. Y. Hughes, J. T. Hughes, John P. Davis, and Pickle, Turner & Kennerly, on the brief), for appellants.

G. W. Montgomery, of Tazewell, Tenn. (Frank Montgomery, on the brief), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This case has already been before this court upon review of a decree sustaining a demurrer to the bill. In the opinion of Judge (now Mr. Justice) Lurton on the former review

*For other cases see same topic & § NUMBER in Dec & Am. Digs. 1907 to date, & Rep'r Indexes

the bill is described as one "to reform a patent and certain mesne conveyances which follow the erroneous calls of the patent in respect to the description of the lands conveyed, and to cancel a deed from the defendant Williams to his codefendants, as a cloud upon the title of the complainant." 166 Fed. 17, 93 C. C. A. 1. As stated in that opinion, the complainant's title consists of, "first, a grant made September 13, 1855, by the state of Kentucky to one Levi Harp, being grant No. 3,290; second, a conveyance of the granted lands by the heirs of Levi Harp to one W. D. Williams; third, a conveyance from Williams to C. H. Rogers; fourth, a conveyance by Rogers to the American Association, Limited; fifth, a conveyance to the American Association, Incorporated, of all the lands owned by the American Association, Limited, under a decree and sale made in a mortgage foreclosure and winding-up proceeding in the court below." American Ass'n v. Williams, 166 Fed. 17, 18, 93 C. C. A. 1, 2.

The fundamental error sought to be corrected is that the second call of the patent from the state of Kentucky to Harp reads, "thence north 23 degrees *west,* 70 poles to a chestnut oak," instead of "north 23 degrees *east,* 70 poles to a chestnut oak," as actually surveyed on the ground preliminary to application for patent, and as shown by the duly filed plat. The mesne conveyances specifically sought to be reformed are those from Williams to Rogers and from the latter to the American Association, Limited.

The bill prays generally that Williams be required, on receiving a certain sum in payment therefor, to convey to complainant the land in question by its correct description, by way of specific performance of an alleged contract between Williams and Rogers; the misdescription in the deed thereunder being alleged to have resulted from a mutual mistake of fact made by those parties. The bill also prays that complainant be decreed to have title to the land under the reformed description. It is alleged that the defendants Hughes and Davis took conveyance from Williams with full knowledge of the facts alleged in the bill, and stand with respect to the title in Williams' shoes.

The bill was demurred to (so far as the causes are here material) (a) because barred by the Tennessee statutes of limitation; (b) on account of delay and laches; (c) on the ground that the bill states no case for reformation; and (d) that no case for specific performance of the contract between Williams and Rogers is stated. This court reversed the decree of the Circuit Court which dismissed complainant's bill, and remanded the cause to the Circuit Court with directions to overrule the demurrer.

The defendants thereupon answered the bill, admitting the discrepancy referred to between the description of the tract in the patent and the actual survey made on the ground; and admitting that, by virtue of the Harp grant and the conveyance to Williams, the latter became "by law invested with the title to the tract of land embraced in the actual survey and plat"; and that defendants Hughes and Davis have no greater rights than Williams, they standing only in his shoes. The answer denies any mistake of fact in the description of the tract conveyed by Williams to Rogers, and alleges that such description

accorded with the intention of the parties, and denies the claimed right of reformation and specific performance. The specific contentions of the defendants in these respects will be more fully stated hereafter. The defenses of laches and of the statutes of limitation are also urged. Upon final hearing on pleadings and proofs (the facts being largely agreed upon by written stipulation) decree was entered for complainant, reforming the description in the complainant's several title papers in accordance with complainant's contention, and quieting the latter's title to the land; and setting aside as a cloud thereon the conveyance by Williams to his codefendants Hughes and Davis, upon the payment by complainant into court, for their benefit, of a certain sum representing the difference of contract price between Williams and Rogers of the acreage covered by the deed between these parties and the acreage covered by the reformed description. From this decree appeal is taken.

1. The alleged mutual mistake of fact.

The land covered by the reformed descriptions in the conveyances as decreed by the court below is that portion of the tract acquired by Harp under grant No. 3,290 lying southeast of the crest of the mountain dividing Bear creek from Clear fork. This portion, according to the survey made on the ground by Harp before he obtained his grant, contains 38 acres. Appellants concede that all question of the reformation of the grant from the state of Kentucky to Harp, its acquisition, by descent, by the latter's heirs upon his death intestate, and the deed from the Harp heirs to Williams, has been eliminated from the present record, and that Williams must be held to have had perfect title to the tract in question at the time he made his conveyance to Rogers. This concession is made, not only because of the decision of this court upon the former appeal, but because the appellants Hughes and Davis claim under Williams, and so are estopped to deny his title. By the settled law of Tennessee, in case of discrepancy between the calls contained in the patent and those in the survey actually made upon the ground, the latter control, and the grant will be held to convey the land actually surveyed, although the calls for courses and distances fail to cover any part of the land so surveyed. Staub v. Hampton, 117 Tenn. 706, 101 S. W. 776; American Ass'n v. Williams, supra, 166 Fed. at page 24, 93 C. C. A. at page 8, and cases there cited.

[1] Upon the facts alleged in this bill the court held upon the former hearing that a mutual mistake of fact was made by Williams and Rogers with respect to the description of the land conveyed by the former to the latter, and that Williams intended to sell, and Rogers intended to buy, the 38-acre tract in question. It is clear that, if the proofs are in entire harmony with the allegations of the bill, the decision upon the former hearing is an adjudication of the rights of the parties to that extent. Western Union Telegraph Co. v. City of Toledo (C. C. A. 6) 121 Fed. 734, 736, 58 C. C. A. 16; Taenzer v. C. R. I. & P. Ry. Co. (C. C. A. 6) 191 Fed. 543, 547, 112 C. C. A. 153. The bill alleges, however, that Williams, before conveying to Rogers, had entered into a contract with the latter to convey all the said tract

of land at a price of $8 per acre upon actual survey thereof, but after the making of the contract, and before execution of the deed, an effort was made to survey the tract, and that conveyance was made in accordance with the survey; both Williams and Rogers assuming that the land had been correctly surveyed, and was being conveyed according to what was then thought to be the correct boundaries thereof. In the former opinion of this court this survey was treated as having been made by Williams. Defendants insist that the proofs fail to sustain the allegations of the bill with respect either to the contract to sell, Williams' responsibility for the survey, or the alleged mutual mistake of fact. The decision upon the demurrer is obviously not an adjudication upon a case materially different from that alleged in the bill, or as construed by the court in deciding the demurrer. As will be seen, the case made by the proofs differs in some respects from that considered by the court on the former review.

[2] The proofs show that in the year 1888 Williams made a contract with Rogers and others for the sale, at $8 per acre, of all the land he owned in that section of the country, the acreage to be ascertained by an actual survey, and that at the time Williams claimed he owned the title acquired by Harp, by virtue of the survey and grant in question, lying southeast of the crest of the mountain referred to; that the conveyance from the Harp heirs, which was obtained by Williams to enable him to carry out his contract with Rogers, referred to the tract in question as "the tract of which Levi Harp died seised and possessed, fully described in grant No. 3,290, dated September 13, 1855, from the state of Kentucky to Levi Harp, for 50 acres"; that both Williams and Rogers were then ignorant of how the tract was located upon the ground, either by Harp's survey or as described in his grant; that Rogers was buying the land to sell to the American Association, Limited, having at that time a contract with that company to sell to it large tracts of land in that section; that Merwin, a surveyor in the regular employment of the Association, undertook to survey out the land acquired by Harp under this grant, and for that purpose was furnished with the grant or a copy thereof; that Williams turned over to Rogers his title papers, to enable the latter to ascertain what land he actually did own, and in order that it might be "surveyed on investigation"; that neither Williams nor Rogers assisted in the survey, Williams having nothing to do with the employing of the surveyor, and paying no expenses of the survey, but knowing that Merwin was doing the surveying, and making no objection to him. The proofs show that neither Williams nor Rogers knew of any mistake that had been made either in the patent or in the certificate of survey; that it was left with Rogers to determine what lands claimed by Williams he would buy, Rogers passing on the title and taking only such tracts or parts of tracts as he desired; that the surveyor failed to discover the difference between the actual survey made upon the ground by Harp and the certificate of survey he obtained; that the surveyor thought he had found the land covered by the Harp grant, although the grant was found to "cut itself in two," and concluded that the portion of the grant claimed by Williams,

and lying south of the crest of the mountain, would hold 26¼ acres. It further appears that in the bond for deed given by Williams to a trustee for Rogers' benefit one of the tracts to be conveyed was described as "granted by the state of K'y to Levi Harp by grant No. 3,290, dated 13 day of September, 1855, for 50 acres"; that, while Williams put into the deed the boundaries furnished him by the surveyor, he "did not mean, informed as he was, to put anything else in the deed than what was put in, and nothing was put in the deed, other than, or different from, what he meant to put there, and nothing was left out that was meant to be put in," yet both Williams and Rogers "thought that the lands described in the deed" made by the former to the latter in pursuance to the previous contract "were covered by the Levi Harp title, grant No. 3,290"; that Williams' contract with and conveyance to Rogers also embraced a large acreage of other land in that section; that Rogers conveyed to the American Association, Limited, all the lands owned by him, including the parcel in question, and that at the time of said conveyance neither he nor the Association knew of the error in the description in the grant, and both thought that the lands set out in the deed were covered by the Harp patent in question; that the tract as surveyed and conveyed from Williams to Rogers contained 26¼ acres, and the former was paid for that amount at the rate of $8 per acre when the deed was executed, Williams insisting at the time he made his deed that there was more than 26¼ acres in that part of the Harp grant south of the mountain top; and that there must be some mistake as to the amount of land which he owned. By reason of this insistence Rogers agreed, in writing, to have the land replatted and calculated, and that, in case the same should measure more than 26 acres, he was to pay Williams for the overplus at the same rate of $8 per acre. By reason of the adoption by the surveyor of the erroneous call mentioned (and apparently by falling into other errors occasioned thereby), there was included in the 26¼ acres surveyed by Merwin but 2.27 acres of land embraced within the Harp survey. The boundaries of the land as surveyed by Merwin, and marked by him on the ground, were put into the deed from Williams to Rogers made in 1891. The stipulation states that the mistake made by Merwin in locating the grant in question misinformed both Williams and Rogers; that while, with the information they had, the deed expressed the meaning of the parties, "if they had been differently informed, they would have acted differently"; that Williams is an illiterate mountaineer, and can neither read nor write; that C. H. Rogers was an able land lawyer and a well-educated business man, of a high grade of ability and strictly honorable. Rogers died in 1896, in ignorance of the mistake. The learned counsel for defendants insist that, under the facts so stated, reformation of the conveyance from Williams to Rogers is not justified. They invoke the rule that such reformation will not be decreed unless the mistake is made entirely plain; that a mere misunderstanding of the facts is not sufficient for awarding reformation; that an actual mistake of fact was not shown, but that the description was written as intended by both and expresses their entire agreement. The rule is invoked

that a purchaser buying a well-defined tract marked on the ground acquires such title as his grantor had in the tract so marked, and no right to any other lands; and that in the case presented complainant's only remedy is by way of action against Williams for rescission or breach of warranty, and damages. But, if the force of this contention is not overcome by the facts already recited, that result is, we think, compelled by the added force of these further facts:

In the year 1874 the state of Kentucky had granted to one Clapp a large tract of land, and this grant conveyed the title of the state to all lands within its boundaries not surveyed previously to the issuance of the grant. The Clapp title passed by mesne conveyances to one Gatliff. The portion of the Harp grant in controversy here, however it may be surveyed, lies wholly within the boundaries of the lands deeded by Clapp to Gatliff. The record is convincing that at the time of the survey by Merwin, with a view to purchasing Williams' interest in the Harp grant, the American Association was engaged in buying from Gatliff the tract so conveyed to the latter by Clapp, amounting to several thousand acres. Indeed, Merwin's letter to Rogers of April 22, 1891, before Williams' conveyance was taken, says:

"I think we have at last found the land covered by Levi Harp, No. 3290, a part of which you contracted from W. D. Williams. At least we have found one corner of it and two marked lines. The other corners seem to be buried in oblivion. This is land which the Association wants, as it cuts completely across a tract which Gatliff is selling to us. The grant cuts itself in two, but to the best of my knowledge Williams' half of it, to-wit: the half which lies on the south side of the crest of the ridge which divides the waters of Bear creek and Clear fork, will hold 26¼ acres. If possible it would be better to take a deed describing the grant by the original calls, and specifying which part Williams conveys. Gatliff's half only amounts to about five acres."

And, while the written contract under which the American Association ultimately (and long before the discovery of the error in the Harp grant and in the Merwin survey) bought the Gatliff title is dated October 13, 1891, and thus a few months later than the deed from Williams to Rogers, the written agreement referred to states that it is "executed in exact accordance with previous agreements made by correspondence, and in lieu of, and to put in one paper the result of all agreements in regard to the below described subject, between A. Gatliff, of Williamsburg, Kentucky, and Alex. A. Arthur, for the American Association, Limited."

[3] But for the Harp grant the tract embraced within it was completely covered by the Gatliff title, which was otherwise entirely good. The purchase of the Harp title, wherever the land might be located on the ground, was necessary to make the Gatliff title good as to such tract. It would therefore naturally be desired by the American Association, regardless of where it lay upon the ground. We are convinced that Williams thought he was selling, and Rogers thought he was buying, so much of the Harp tract as actually lay south of the crest of the mountain; that Rogers would not have cared to buy otherwise; that his object in buying was to perfect the title of the Association to the land covered by the Clapp grant, wherever the land

covered by the Harp grant might be located. We are satisfied that the sale would not have been made but for the belief by both parties that Williams was selling, and Rogers buying, so much of the Harp tract as lay south of the mountain, and that the purchase according to the description in the deed would not have perfected title to any land desired by the Association except to the extent of 2.27 acres. These facts taken together seem to us decisive of the proposition that the error in the survey made by Merwin, growing out of the error in the second call of the Harp grant, and the consequent misdescription in the conveyance from Williams to Rogers, were the result of a mutual mistake of fact. That under such circumstances the American Association, Limited, would have had the right, unless barred by laches or limitation, to reform the conveyance in question as against all the defendants, needs no citation of authority beyond reference to the previous decision of this court in this cause and the cases there cited. The fact that Rogers' deed to the Association contained warranty only as against parties claiming under him does not affect this right. Moelle v. Sherwood, 148 U. S. 21, 28, 30, 13 Sup. Ct. 426, 37 L. Ed. 350; United States v. California, etc., Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354.

2. The statute of limitations.

[4] Defendants contend that this suit is barred by section 4473 of Shannon's Tennessee Code, which provides a limitation of 10 years (after the cause of action accrues) with respect to "actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds, actions on judgments and decrees of courts of record of this or any other state or government, and all other cases not expressly provided for." The conveyance from Williams to Rogers was made in 1891; that from Rogers to the American Association, Limited, in 1893. The bill was filed in 1906. If section 4473 applies, the right of action is barred, provided it accrued upon the making of the conveyance and before the discovery of the error, a proposition we do not find it necessary to decide. Section 4458 of the Code provides that:

"No person, or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

If section 4458 is applicable, section 4473 manifestly has no application, because the case presented would thus not be within the general designation of "other cases not expressly provided for." If section 4458 applies, the defense of limitation fails, because defendants never had actual possession of the land in controversy; and it is settled by Tennessee decisions that actual possession is necessary to maintain defense under section 4458. Foster v. Grizzle, 1 Cold. (Tenn.) 530; Smith v. Lee, 1 Cold. (Tenn.) 550, 551; Stewart v. Harris, 9 Humph. (Tenn.) 714; Pullen v. Hopkins, 1 Lea (Tenn.) 741, 744; Hicks v. Tredericks, 9 Lea (Tenn.) 491, 492.

Is the proceeding before us an action "for any lands, tenements, or hereditaments"? Both the sections in question are contained in the

chapter of the Code on "Limitations of Actions." Section 4458 is found in article 2, under the compiler's title of "Limitation of Real Actions." Section 4473 is contained in article 3, under the compiler's title of "Limitation of Actions Other Than Real." In our opinion section 4458 applies to this case. While the action is not for the possession of real estate, it is, in a very proper sense, one "for  *  *  * lands." It was not necessary to seek possession, for the defendant had not such possession. The bill prayed that Williams be required to convey the land to complainant by its proper boundaries; that title be divested out of Williams and vested in complainant; and that the deeds from Williams to his codefendants be canceled. The decree adjudged reformation of the conveyances in question, and decreed a valid, indefeasible title to the land to rest in complainant, declared that the deed from Williams to the other defendants conveyed no title, and canceled the same as a cloud upon complainant's title. The clerk of the court was required, upon complainant's application, to certify a copy of the decree for registration, a not unfamiliar practice in substitution for the earlier practice of providing conveyance by a master. The construction we have adopted is not without support in precedent. In Brandenburg v. McGuire, 105 Ky. 10, 44 S. W. 96, 19 Ky. Law Rep. 1598, a statute barring actions for the recovery of realty if not brought within 15 years was held to apply to an action to supply a lost deed. A statute of Missouri imposing a limitation of 10 years upon actions for the recovery of lands has been held applicable to actions brought to set aside deeds made in fraud of creditors. Stout v. Rigney (C. C. A. 8) 107 Fed. 545, 548, 46 C. C. A. 459, and cases cited; Clapp v. Leavens (C. C. A. 8) 164 Fed. 318, 320, 90 C. C. A. 250. A statute of Arkansas authorized a purchaser of lands under sheriff's sale to institute proceedings requiring the persons interested to show cause why the sale should not be confirmed. In Parker v. Overman, 18 How. 137, 141 (15 L. Ed. 318), it was said of an action under that statute that "it acts upon the land." The case did not involve question of limitation of action. As indicating the tendency of the Tennessee courts to recognize and enforce the spirit of its limitation laws, it is to be noted that the limitation provided by section 4473 to "actions on judgments" has been held to apply to a suit to vacate a stay of judgment and to recover a new judgment thereon. Ballard v. Scruggs, 90 Tenn. 585, 588, 18 S. W. 259, 25 Am. St. Rep. 703. See, also, Sheratz v. Nicodemus, 7 Yerg. (Tenn.) 9, 12. The correctness of the construction we have adopted is strengthened by its results. In an action in ejectment, upon proof of the error in the calls of the grant, recovery could be had according to the actual survey, and without reformation of the grant. Garner v. Norris, 1 Yerg. (Tenn.) 62, 66; Nolen v. Wilson, 5 Sneed (Tenn.) 332; Staub v. Hampton, 117 Tenn. 706, 743, 101 S. W. 776; American Ass'n v. Williams, supra, 166 Fed. at page 24, 93 C. C. A. at page 8. And while an adverse claimant not in possession can, under section 4972 of the Tennessee Code, be sued in ejectment (Smith v. Lee, 1 Cold. [Tenn.] 550, 551; American Ass'n v. Williams, supra, 166 Fed. at page 21, 93 C. C. A. at page 5), yet the statute of limitations would not run against such an action unless,

actual adverse possession for the statutory period had been had (Smith v. Lee, supra). Under the Tennessee practice an ordinary suit in ejectment may be prosecuted by bill in chancery. Frazier v. Browning, 11 Lea (Tenn.) 253. Had the bill partaken of the double aspect of an ejectment suit and a bill in aid thereof, it would result, if defendants' contention as to the application of section 4473 is correct, that the ejectment feature (under which possession could be obtained) would not be barred, but the reformation feature would be barred. A construction of section 4458 which would make the limitation inapplicable to an ejectment suit, but which would apply it to the suit before us, does not commend itself. The conclusion reached makes it unnecessary to consider the effect upon the question of limitation of the former decision of this court upon the demurrer.

3. Reformation of judicial sale.

[5] Complainant's purchase was made at a judicial sale, under decree of the United States Circuit Court for the Eastern District of Tennessee, in the consolidated causes of Central Trust Co. v. American Association, Limited, and Curtis v. Same Defendant, the first of these causes being a foreclosure suit, the second a winding-up proceeding brought by one of the Association's stockholders. The Williams parcel in question was not covered by the mortgage. It was not specifically described in either bill. It is first objected that the court had no jurisdiction to sell the Williams land. This objection is based largely upon the fact that the land was not described in the bill. It was alleged in the bill that the Association was possessed of "the freehold lands, property and hereditaments, situated in the states of Kentucky, Virginia and Tennessee, hereinafter referred to as being under mortgage to the Central Trust Company of New York as trustee, as well as divers and sundry choses in action and articles of personal property and pieces of real estate not embraced in the said mortgage"; and it was suggested that the whole of the real and personal property of the Association be placed in the possession and under the control of the court's receiver. A special master was directed to ascertain and report what property, and the character of the same, was owned by the Association which did not pass under the mortgage foreclosure, "which was located in Tennessee, and which may be properly termed Tennessee assets of the defendant corporation." The receiver reported, among other items, the Williams tract under the description contained in the conveyance to Rogers. Sale of the tract in question was afterwards duly made to the present complainant. The learned judge who presided below was of opinion that "it is not essential to give jurisdiction under a general creditor's bill that all the property of the defendants should be specifically described, but that under such a bill as the Curtis bill the court has jurisdiction to sell all its property, real or personal, though not specifically described." We think this the correct view, and that the Circuit Court had jurisdiction to make the sale in question.

[6] It is next objected that this court cannot in this cause reform the conveyance under the judicial sale. This contention rests largely upon the propositions, first, that the American Association, Limited,

had no title to the land under its purchase from Rogers, and that complainant, under the rule of caveat emptor, took only the title held by the party whose lands were sold; and, second, that the sale proceedings did not purport to pass title to the 38 acres in question, but only to the 26¼ acres described in the deed from Williams to Rogers. Were this an ordinary judicial sale, there would be much force in defendants' contention, and for the purposes of this opinion we assume, without deciding, that the contention is correct. But the record shows that under a reorganization scheme complainant was incorporated as the successor to the American Association, Limited. The decree of the Circuit Court following the sale proceedings so treated the matter. The Williams' description, as well as other parcels, had been bid off by complainant, and its notes therefor deposited with the clerk of the court. By the final decree the receiver was directed to turn over to complainant all the assets of the insolvent corporation then remaining in his hands, the clerks of the courts were ordered to pay over to complainant the cash remaining in their hands arising from the sale of lands covered by the foreclosed mortgage, and to "cancel and surrender to it the several notes given by it for property, not included in said mortgage, sold in said causes, and purchased by the American Association, Incorporated." It was also ordered:

"That the title to all of the assets of the said insolvent corporation * * * remaining unsold and undisposed of, be divested out of the American Association, Limited, * * * and vested absolutely in the American Association, Incorporated."

In our opinion, complainant thus succeeded to all the rights of the American Association, Limited, and Rogers, with respect to the land in controversy, including the claimed right of reformation.

4. Laches and delay.

[7] The record does not sustain this defense. The mistake in the Harp grant was not discovered until 1905. There is nothing on which to base a charge of negligence in failing to make the discovery earlier. The bill was filed in 1906. No equities are created in defendants' favor from the fact that the land which was in 1891 worth but $8 an acre is now, by reason of the opening up of railroad communications and otherwise, worth from $100 to $200 per acre. No possession has been had of the land, and the defendants have done nothing to contribute toward this advance in value. Defendant Williams, had he continued the owner, would have been without equity in this respect. It is conceded that the other defendants do not occupy the status of innocent purchasers. They took their conveyance from Williams by reason of an antecedent indebtedness, and with knowledge of the rights claimed by complainant. The decree appealed from required complainant to pay into court, for the benefit of defendants Hughes and Davis, $8 per acre for the difference between the 26¼ acres paid for and the 38 acres recovered. This is all, in our opinion, that equity requires.

We find no error in the record, and the decree of the Circuit Court is accordingly affirmed, with costs.